JOHN C. BROWN, *Appellant*, v. MARY REICHLING *et al.*, *Appellees.*

No. 17,411.

SYLLABUS BY THE COURT.

1. VENDOR AND PURCHASER—*Contract—Abstract of Title—Default—Specific Performance.* Where in a contract for the sale of land the seller agrees to furnish an abstract showing a clear title, and the buyer to pay the purchase price on a certain day, when a deed is to be delivered, the buyer is not in default for failure to make payment on the day named when at that time he has made a reasonable objection to the title and abstract, with respect to a matter which apparently admits of correction, and no effort to that end has been made by the seller.

2. ——— *Same.* The fact that one of the deeds under which the seller derives title contains a misdescription of the property, resulting from a mistake on the part of the draftsman, affords grounds for a reasonable objection.

3. ——— *Same.* The situation is not altered by the fact that after the objection was made the draftsman, without authority from the grantors, changed the description in the deed, and caused corresponding changes to be made in the record and in the abstract.

4. ——— *Same.* Under the circumstances stated in the foregoing paragraphs the right of the buyer to enforce the specific performance of the contract is not barred by the fact that upon the day fixed for payment he did not have money sufficient for the purpose, nor property upon which he could have raised it, where he had made arrangements by which he could have borrowed the necessary amount by using the land he was buying, with the other property, as security, had the title been marketable.

Brown v. Reichling.

Appeal from Geary district court.  Opinion filed March 9, 1912.  Reversed.

*Lee Monroe,* and *W. S. Roark,* for the appellant.

*John E. Hessin,* for the appellees.

The opinion of the court was delivered by

MASON, J.: On September 13, 1909, John C. Brown entered into a written contract with Pete, Jake and Mary Reichling, by the terms of which they were to sell to him two hundred acres of land for $7000, of which $500 was paid at the time.  He was to pay the remainder on or before February 20, 1910.  Upon receiving this payment they were to execute a deed conveying to him a good title.  They also agreed to give him an abstract showing a clear title.  The contract contained a provision that if he made default the agreement should be forfeited at their option, they to retain the payment made, in satisfaction of damages.  A controversy arose over the matter, and on April 9, 1910, he began an action asking for the specific performance of the contract.  A demurrer to his evidence was sustained, and he appeals.

The evidence tended to show these facts: The contract was left at a bank.  Shortly after its execution the Reichlings placed with it an abstract of title to the land.  On February 12, 1909, Brown called for and received the abstract.  He noticed that the description of a forty-acre tract in one conveyance appeared as the north*west* quarter of a quarter section, instead of the north*east* quarter, the correct description.  The next day he called upon the Reichlings and called their attention to the defect, and asked to have it remedied.  They refused to do anything about it, and told him to return the abstract to the bank.  The next day he did so, and called the attention of the banker to the matter.  The banker discovered that in a deed made in January,

41—86 KAN.

1907, to the Reichlings by some of their relatives, which he had himself drawn, he had by inadvertence written the word "west" in place of "east," and that the erroneous description had been followed in the record and transferred to the abstract. Upon his own responsibility, and without conference with the parties to the deed, he changed the erroneous description therein, and caused corresponding changes to be made in the record by the register of deeds and in the abstract of title by the abstracter. Brown was informed by the banker of these changes before the 20th. He told the banker he was not satisfied with the title—that he desired a quitclaim deed to be made by the grantors in the defective conveyance. February 20 was Sunday. On Saturday, the 19th, Brown went to the bank, expecting that the Reichlings would come there and that some adjustment of the matter could be had, but they did not appear. On Monday he went to their home, talked over the situation with them and asked them to procure the quitclaim deed. They refused to do so, saying that it was too late—that the time was past. A week later Brown was told that the $500 would be returned to him if he would accept it, but he refused to do so. On April 6, 1909, Brown made a formal tender of $6500 to the Reichlings and demanded a deed. The tender was made with money he had borrowed for the purpose. He had never previously made a tender, nor had he had sufficient money to enable him to do so. He had made arrangements to borrow the money by using the land he was buying and an eighty-acre tract that he already owned as security. He also had some hogs, worth $1100, which he could have sold at any time. He had no property from which he could have raised the $6500, except as stated.

The argument in behalf of the defendants is substantially this: The contract was that the payment of the purchase price should be completed on February 20; the plaintiff made no offer to pay, and was unable to

pay, until after that time, and until after the defend-
ants had notified him that the deal was off, and had
offered to return the amount he had paid; therefore,
his right to specific performance had been lost.   We
think the conclusion unsound for these reasons:  Ordi-
narily the time of payment is not regarded as of the
essence of such a contract.   (26 A. & E. Encycl. of L.
73; 36 Cyc. 707.)   There was nothing in the terms of
the contract here involved, or in the circumstances of
the transaction, to take this case out of the general
rule.   The plaintiff had a right to require that upon
his payment of the $6500 the defendants should deliver
him a deed conveying a good and marketable title, as
well as an abstract showing the state of the title.
There was no occasion for his making a formal tender
of the money until the defendants were prepared to
comply with the terms of the agreement on their part.
Under the evidence, the defendants were the actual
owners of the property, but the misdescription in one
of their deeds made their paper and record title defec-
tive.   The changes procured by the draftsman of the
deed, without the knowledge of the grantors, did not
cure the defect.   True, the record and abstract had
been made to show a good title, but they did not show
its actual condition.   They showed a deed to the de-
fendants, not in the condition in which it had been
signed, but in a condition that resulted from a change
which was unauthorized, and therefore ineffective in
law, although made in good faith and with the best
intentions.   It was entirely reasonable that the pur-
chaser, knowing of the fact, should ask that if possible
the flaw be remedied by a deed from the grantors in
the altered conveyance, or in some other suitable man-
ner.   "A reasonable objection to the vendor's title is a
good excuse for the vendee's delay."   (36 Cyc. 731.)
It seems probable that a quitclaim deed could have been
procured.   Fair dealing required that the Reichlings
should procure such a deed if able to do so.   They ap-

parently made no attempt, basing their action, not on the ground of inability, but upon the contention that the plaintiff had lost the right to enforce the contract.

That the plaintiff did not have the money with which to complete the payment is not a bar to his recovery, if he had, as he testified, made arrangements to obtain it. The fact that this arrangement contemplated the use as security of the property he was buying is not a bar, if by this means he was able to procure the money at the time it was needed to complete the transaction according to the terms of the contract; and after he had made a reasonable requirement with respect to the completion of the title and the abstract, it was not incumbent upon him to produce the money until the requirement had been met, if that were practicable, or in case of a refusal to attempt to meet it, until the lapse of a reasonable time in which to determine upon his course. It can not be said, as a matter of law, that under the circumstances indicated by the evidence the delay on his part forfeited his rights under the contract.

The judgment is reversed and a new trial ordered.