No. 34,325

H. C. EISENHOUR, Receiver, *Appellant*, v. THE CITIES SERVICE OIL COMPANY (formerly THE EMPIRE OIL AND REFINING COMPANY), *Appellee*.

(89 P. 2d 912)

854

Opinion filed May 6, 1939.

*D. W. Eaton* and *Robert R. Hasty,* both of Wichita, for the appellant.

*A. M. Ebright, Hayes McCoy* and *R. O. Mason,* all of Bartlesville, Okla., for the appellee.

The opinion of the court was delivered by

HOCH, J.: This was an action by a receiver to require specific performance of a contract to purchase an oil and gas lease. Demurrer to the plaintiff's evidence was sustained on the ground that the receiver was not in a position to carry out his own part of the contract and that therefore the respondent would not be required to do so. Plaintiff appeals.

The issue arose in an ancillary proceeding in which the receiver, Eisenhour, had been named to take charge of certain mineral rights in Ellis county, Kansas, said to be owned by nonresidents, E. E. Boyle and L. S. Boyle. A brief statement about the main case may help to clarify the situation presented by the issue in this case. Flitch, a resident of Kansas, sued to recover his share of the profits arising from the sale of the mineral rights in question, basing his claim upon a certain partnership agreement between himself and E. E. Boyle. C. A. Noll, as receiver of the Union Finance Corporation, intervened in the action, alleging that the Boyles were officers of the corporation and that the properties were bought with corporation funds. After the main action was begun, Eisenhour, the plaintiff in this case, was appointed receiver to take charge of the mineral rights involved in the litigation. In the main case the trial court held that the mineral rights belonged to the intervenor, Noll, subject to certain rights of plaintiff Flitch to share in the proceeds of sale. A controversy between Flitch and Noll is being disposed of in another case now before this court.

We return to the instant case. Eisenhour, receiver, was given authority to make a lease covering the mineral rights, subject to approval by the court. Negotiations for sale of such a lease fol-

lowed, and on July 7, 1937, Eisenhour presented his petition to the court asking authority to accept a bid for the lease submitted by the then Empire Oil and Refining Company, now and hereinafter called the Cities Service Oil Company. The bid was set out in full. On the same day, July 7, the court issued an order authorizing acceptance of the bid and directing the receiver to consummate the sale.

The sale was not consummated, and about seventeen months later, in December, 1938, the receiver, acting under a "show cause" order of the court, began this action for specific performance—to require the company to complete the deal and pay the purchase price. There is disagreement as to the cause of the delay in bringing the action. Plaintiff alleges that permission to proceed was denied by the court during the pendency of the main case, and that the main case was not determined in the trial court until in October, 1938. The respondent denies that such permission was refused by the court, and contends that there was no reason why the receiver should not have started action in July, 1937, or any time thereafter, if he desired to do so. While this question cannot be settled on the record before us, it must be said that examination of the abstract discloses no record of any application to the court for such permission or of any action by the court thereon, prior to the instant case.

Hearing was held in the district court on December 30, 1938, and at the conclusion of plaintiff's testimony the respondent demurred to the evidence on the ground that it showed affirmatively that the receiver is not entitled to the relief asked for. Various questions thus raised will be discussed later. In sustaining the demurrer the court emphasized the length of the term which the lease was to run. It is undisputed that the mineral rights which the proffered lease purports to cover will expire in 1943. The court found that a lease thus running "for five or six years" was not sufficient to comply with the offer and acceptance—that the only bid which the respondent had made was for a ten-year lease. Specific performance was denied on the ground that it would be unconscionable to require the respondent to perform under the contract when the receiver was not able to do so.

Recital in detail of the facts and circumstances set forth in the record would becloud rather than clarify the issues. Simmered down, the contentions of the appellant are that the amended bid for the lease, approved by the court, did not provide for a ten-year term; that the approval and order of the court constituted confirmation of

sale and that the respondent is thereby foreclosed, under the doctrine of *caveat emptor*, from now attacking the title; that the respondent failed to make objections to the title within the time provided by the contract, after receiving the abstract; that the objections made at the time were insufficient to avoid the contract; that the respondent must be held to have waived all objections not made within the time provided for submitting title requirements; and lastly, that the five or six years which the mineral interests have yet to run would be extended indefinitely by production of oil on the properties and that the term remaining was ample for the exploration purposes for which the lease was bought. The respondent says that the bid which it submitted called for a ten-year term; that the receiver failed to furnish a merchantable title as required; that the court order in question was in no sense a confirmation of sale, but was merely approval of the bid and the lease, with directions to complete the deal according to the terms of the offer and acceptance; that there was no waiver which would relieve the receiver from tendering a lease fully in accord with the bid.

It is elementary that specific performance of a contract will not be ordered unless the one who seeks to enforce it has performed his part of the contract or is able to perform and offers to do so. (13 C. J. 727.) It is not an exception, but rather a corollary to the doctrine, that specific terms of the contract may be waived by the opposing party, or under certain circumstances he may be estopped from insisting upon them. The controlling question here is whether the receiver was in a position to perform the contract in accordance with the terms of the bid and acceptance, or if not, whether the company had waived or was estopped from insisting upon the terms which the receiver was not in position to perform.

First, did the contract call for a ten-year lease? In support of his contention that it did not, the receiver relies upon certain language in the company's letter of July 6, 1937, submitting a new bid. That language is "Empire Oil and Refining Company hereby withdraws its bid dated July 3, 1937, for a new ten-year oil and gas lease," etc. (description of the mineral interests covered by the lease) and "substitutes therefor the following bid:" Then follows the terms of the offer, which need not be here recited. The terms related to the price to be paid in cash and in oil, a requirement as to merchantable title and certain other provisions which will be hereinafter referred to. The point made by appellant is that the language which

followed the words "following bid" contained no specific reference to a ten-year term, and therefore the requirement as to a ten-year term was eliminated from the new bid. We cannot agree with that contention. Not only is that a supertechnical interpretation of the bid, but the record shows that the lease itself accompanied the bid, and that the lease, on its face, called for a ten-year term; that this lease was attached to the petition of the receiver asking for acceptance of the bid and that the court's approval was also endorsed on the lease itself. The receiver himself unquestionably treated the bid at the time as calling for a ten-year term.

Was the order of the court of July 7 a confirmation of sale which precludes the company, under the doctrine of *caveat emptor*, from now contending that title does not comply with the terms of the contract? We have no difficulty with that question. Plainly the court's order was not such a confirmation of sale. It accepted the bid, including all the terms included in it, and authorized the receiver to complete the deal. The contract called for the furnishing of a merchantable title and for compliance by the company with certain provisions relating to submission of title requirements after receipt of the abstract of title, etc. That the receiver himself so construed and treated the order at the time is inescapable from the record. Following the court's order the receiver did furnish abstract of title, the company made certain objections and requirements, and correspondence and conferences on the matter ensued relating to the issues involved.

Appellant urges that the company agreed to submit objections to the title, if any, within forty-eight hours after the abstract was received; that its objections were not submitted until the third day thereafter and it is therefore estopped from now attacking the title. Examination of the provisions of the bid, and of the record, does not, in our opinion, support appellant's position. The abstract, accompanied by a draft for the initial cash payment, was delivered on July 14; on July 16 the receiver visited the offices of the company in Wichita and an extension of twenty-four hours was asked by the company, which the receiver granted. Objections to the title were submitted on July 17. The receiver says that this extension was only for payment of the draft, and that interpretation has much support in the record. It is not, however, an unreasonable interpretation, in the absence of any conclusive proof to the contrary, that the extension of one day ran to the whole transaction. Subsequent

negotiations and correspondence between the receiver and the company indicate that the matter being discussed was whether the company's objections to the title were well founded and not as to whether they were made in time. More than that, if technical grounds are to be stressed, it appears that the company was to make title requirements within forty-eight hours after receipt of title papers, abstract of title "certified to date" and approved lease "covering the interest upon which this offer is made." The certification of the abstract antedated by several days the date of its submission, and the principal contention of the company is that the lease does not cover "the interest upon which the offer was made." If it does not cover the interest upon which the offer was made, it might well be argued that the time limit had not commenced to run.

Did the receiver furnish a merchantable title as required? This question was the subject of considerable controversy. In its letter of July 17 the company asked that acquiescence in the lease be secured from the Boyles, "by means of ratification or in any other way suitable to our attorneys' requirements." This requirement was elaborated in subsequent negotiations and correspondence, and the matter is stressed in appellee's brief. At the time the abstract of title was presented no service had been had upon the Boyles, and neither of them was in court when the receiver for their property was appointed; the court's order authorizing the lease of the property was made on July 7, the first publication of notice of service was not made until July 8, and final publication not until July 22. There was ample justification for the company's concern about the title in this regard. We need not here pass upon the question of whether the orders relating to the Boyle property were valid under the facts shown. There was at least sufficient doubt to render the title nonmerchantable at the time. It is not necessary to show that a title is bad, in fact, in order to render it unmarketable or nonmerchantable. It is sufficient if there be doubt, based on reasonable grounds, which would impel a reasonably prudent man, familiar with the facts, to reject it in the ordinary course of business. (66 C. J. 863; *Williams v. Bricker*, 83 Kan. 53, 109 Pac. 998.)

It is well settled that the equities must be very strong for doing so before a court will compel a purchaser under an executory contract for the sale of land to accept a doubtful title. (*Linscott v. Moseman*, 84 Kan. 541, 114 Pac. 1088; *McNutt v. Nellans*, 82 Kan. 424, 108 Pac. 834; *Carnine v. Bacon*, 131 Kan. 643, 293 Pac. 392.)

When the company made certain objections to the title on July 17, and later, did it thereby waive all other objections, and put itself in a position where it could not, at the time of the hearing on December 30, object to taking a lease with a term less than ten years? We do not think so. It is true that many cases hold that waiver as to certain other objections results under such circumstances. But they generally involve only such other objections which the vendor might have met had they been presented at the time. The general rule is that the prospective purchaser has not waived objections which go to essential defects which the vendor was in no position to correct. (66 C. J. 947, 948; *Oppenheimer v. Knepper Realty Co.*, 98 N. Y. Supp. 204; *Higgins v. Eagleton*, 155 N. Y. 466, 50 N. E. 287; *Brown v. Pears*, 12 Ont. Pr. 396.) We think the present case is clearly in point. The defect is not a mere cloud upon the title which corrective measures might have removed. The vendor simply did not have and does not now have the ten-year interest which the lease called for. It certainly cannot be said, as a matter of law, that he was in a position to cure the defect, and he does not even now offer to do it.

Lastly, appellant contends that the five- or six-year interest would be automatically extended by production of oil from the properties and that the rights of the respondent would be in no way prejudiced, since there would be ample time to prove the properties by exploration. That contention requires little comment. It is easy to imagine reasons why the purchaser might not have been interested in a term less than ten years. In any event, it is not for the appellant or for the court to decide whether the purchaser would "get something just as good." The bid was for a ten-year interest and the receiver could not perform under the contract by furnishing a lesser term.

We conclude that the trial court was right in sustaining the demurrer. The judgment is affirmed.