No. 37,207

B. F. Heidner, *Appellant,* v. The Hewitt Chevrolet Company, *Appellee.*

(199 P. 2d 481)

November 13, 1948. Opinion filed

*Henry H. Asher,* of Lawrence, argued the cause, and *Clarence M. Gorrill* and *Alan F. Asher,* both of Lawrence, were with him on the briefs for the appellant.

*John B. Pierson,* of Ottawa, argued the cause, and was on the briefs for the appellee.

The opinion of the court was delivered by

Cowan, J.: This is an appeal from a judgment denying specific performance in a case involving the purchase of an automobile. The facts have been found by the district court and no exceptions taken thereto by either party. This court, on appeal, is bound by the findings of fact but not by the conclusions of law.

From the findings of the trial court the following facts are estab-

lished: On January 8, 1946, the plaintiff below deposited, with defendant company at Ottawa, Kan., $100 on a new car and received a receipt reading as follows:

"Hewitt Chevrolet Company 412-419 South Main Street, Phone 1780-1781, No. 3115 Ottawa, Kansas, January 8, 1946, Received of B. F. Heidner One Hundred and no/100 Dollars $100.00. Deposit on New Car. Non-transferable. Hewitt Chevrolet Company, by Alex M. Telfer. Thank you."

Plaintiff was given a number (66) on defendant's list. There were many prospective buyers of automobiles dealt in by the defendant but the supply of cars from the manufacturer did not keep up with the demand. Most of the prospective purchasers were required by defendant to make a deposit of $100 in order that such purchasers might receive preference in the purchase of automobiles when available. No specific model was mentioned at the time the plaintiff made the deposit, although plaintiff stated that he did want an Aero Sedan like some he had seen. About July 21, 1947, plaintiff was notified by defendant that plaintiff's number (66) was up and that the defendant had in stock an automobile which plaintiff might have. Plaintiff went to defendant's place of business, talked to a representative of the defendant, and was shown the car he could have. Plaintiff stated the car shown him was satisfactory and offered to take it. Defendant then informed plaintiff he could have the car upon payment of the purchase price and delivery to the defendant of a used car or "trade-in." The plaintiff was ready, willing and able to pay the defendant the cash price of the new car shown him. Plaintiff objected to producing a used car and insisted he was entitled to purchase a new car without bringing in a used one. Defendant refused to deliver the new car to plaintiff unless the plaintiff produced a used car. This plaintiff refused to do. On January 8, 1946, a "trade-in" or used car was not mentioned. About July 21, 1947, defendant offered to return to plaintiff the $100 deposit but plaintiff refused to accept it and shortly thereafter brought this suit for specific performance. The district court found that on January 8, 1946, no agreement or contract was entered into between plaintiff and defendant specifying either the type of automobile or the price to be paid therefor, and that no date was fixed when delivery of an automobile would be made except that when plaintiff's number (66) came up, plaintiff could buy an automobile from the defendant, the date of delivery presumably to be when the car became available from the manufacturer. There is a

further finding that it was possible, but highly improbable, that plaintiff could have bought in the open market, for cash alone, the type of car for which he sought specific performance. Plaintiff has tendered to defendant the cash market price of the automobile which he offered to accept, less the sum of $100 which plaintiff had already deposited with the defendant.

As a conclusion of law, the district court found that the original receipt was not specific or definite enough to create a contract between the parties and that the minds of the parties did not meet on any contract on January 8, 1946, and no specific contract can be implied from what occurred on that date. Apparently the district court did not give any consideration to what occurred about July 21, 1947, which was the time a car satisfactory to plaintiff was shown to him by the defendant and plaintiff offered to accept it.

Failure to grant specific performance in contracts relating to personal property does not, as a rule, arise from a difference between personalty and realty but proceeds upon the theory that equity will not interfere where there is an adequate remedy at law for damages. If, however, it is made to appear to the court that like chattels cannot be readily purchased on the market at the time specified in the contract for delivery of the chattel, specific performance will generally be granted if the other necessary elements are present. (49 Am. Jur. 148-9, § 126.) Here, the trial court found it was possible, but highly improbable, that plaintiff could have bought in the open market, for cash alone, the type of automobile he was willing to accept on or about July 21, 1947. The very fact that the plaintiff was given a number (66) on January 8, 1946, to indicate his order of preference, coupled with the fact that he had to wait a year and a half before his number was reached, establishes quite clearly that a like automobile was not readily obtainable on the market. In addition to this, the very demand by the defendant for a "trade-in" indicated the scarcity of cars. We take judicial notice of the fact that cars of the type and kind involved in this lawsuit were scarce and difficult to obtain for cash alone on the open market at the times in controversy. (31 C. J. S. 674, *et seq.*)

Equity will determine the enforceability of a contract as to certainty, completeness and mutuality as of the date of demand for specific performance or at the time suit is filed rather than at an

earlier date. If the contract is certain, complete and has mutuality on the day remedy is invoked or suit is filed, specific performance will not be refused because of a lack of completeness, certainty and mutuality at a prior date. (*Zelleken v. Lynch*, 80 Kan. 746, 104 Pac. 563; *Marsh v. Brown-Crummer Inv. Co.*, 138 Kan. 123, 23 P. 2d 465; *State Highway Comm. v. Ames*, 143 Kan. 847, 57 P. 2d 17; 58 C. J. 940; *Driebe, et al., Aplnts., v. Fort Penn R. Co., et al.*, 331 Pa. 314, 200 A. 62, 117 A. L. R. 1091; Pomeroy's Specific Performance of Contracts, 3d ed., §§ 158, 151; Fry on Specific Performance, 6th ed., ¶ 338; 1 Lawrence on Equity Jurisprudence, 188-189, § 142.) Whatever may have been the situation as to the agreement between the parties on January 8, 1946, as to certainty and mutuality, the contract was definite as to the type of automobile, the price to be paid therefor, and the date for delivery, at all times subsequent to the day the car was shown to the plaintiff by the defendant and plaintiff agreed to accept the same. It is well known, of course, and a matter of which the court does take judicial notice, that the prices of new automobiles in the hands of an authorized dealer of the manufacturer have been standardized by the manufacturer and can be readily computed by adding to the f. o. b. factory price of any model the freight, taxes and other items of a like nature, all of which are well known to both dealer and customer. (*Topeka v. Stevenson*, 79 Kan. 394, 99 Pac. 589; 31 C. J. S. 674, *et seq.*)

When plaintiff was shown the car at defendant's place of business, plaintiff offered to accept the same and pay the cash price thereof and the defendant's only ground for refusal to deliver the car was that the plaintiff would not furnish a "trade-in." The district court found that this "trade-in" feature was no part of the original agreement of the parties and was not even mentioned on January 8, 1946. It is well established by the decisions of this court that a litigant may not "mend his hold." In *Sandefur v. Hines*, 69 Kan. 168, 76 Pac. 444, this court said:

". . . The rule applicable in such cases was stated in *Redinger v. Jones*, 68 Kan. 627, 75 Pac. 997, in which Mr. Justice Burch made the apt quotation that, 'where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold; he is estopped from doing it by a settled principle of law.'" (p. 171.)

Since the defendant here, before litigation was commenced, gave

only as its reason for nonperformance a ground which was inadequate, it could not, after suit was filed, "mend its hold" and rely upon other and different defenses. It was limited in the trial to the single defense it asserted at the time of breach.

It follows from what has been stated that the conclusions of law of the trial court were not correct and judgment should have been granted in favor of the plaintiff as prayed for by him.

The case is reversed with directions to enter a decree for specific performance in favor of the plaintiff.