ACE REALTY, INC., an Oklahoma corporation, Appellant,

v.

P. A. LOONEY et al., Appellees.

No. 46881.

Supreme Court of Oklahoma.

July 16, 1974.

Rehearing Denied March 4, 1975.

Jones, Givens, Brett, Gotcher, Doyle & Atkins, Tulsa, for appellant.

Ungerman, Grabel & Ungerman, Tulsa, for appellees.

HODGES, Justice.

This is an appeal by Ace Realty, Inc., (Ace) from a judgment which denied its petition for declaratory relief and which granted specific performance in favor of P. A. Looney, Looney and John Doe, co-partners d/b/a Tri-Angle Development Company (Tri-Angle).

Ace had sought construction and interpretation of a real estate sales contract in which it as seller sought to terminate the rights of Tri-Angle as purchaser.

The contract was executed by the parties on March 1, 1972, and provided for the sale of certain real property in Tulsa, Oklahoma.

The contract provided, among other things, for the delivery of deed, possession, and payment of the purchase price at closing. It also stated: "Providing evidence of merchantable title has been furnished this sale is to be closed on or before May 1, 1972."

It also contained several conditions, two of which constitute the basis for the controversy.

"1.  Seller within 20 days after approval of this contract shall furnish purchaser an abstract of title certified to date, showing a good and merchantable title in the seller, subject

to easements, building restrictions of record and the above mortgages, if any. Purchaser shall have 30 days thereafter in which to have the abstract examined and furnish seller notice in writing of any objections thereto. In case of valid objections to the title, seller shall have 60 days or such additional time as may be agreed to in writing to meet same. In the event the title cannot be perfected and same is not insurable, or seller does not approve this contract, the above part payment on the purchase price shall be returned to the purchaser and this contract shall be of no further force and effect.

"2. If no objections are made within the time above specified or, if made, when same have been met, seller shall deliver a properly executed general warranty deed conveying the above property to purchaser to the undersigned realtor for delivery to purchaser upon payment of the balance of the purchase price in the manner hereinabove provided."

Pursuant to the terms of the agreement, Ace furnished an Abstract of Title. Upon examination of the abstract Tri-Angle discovered that the prior record owner, Benny Altman, claimed to have an unrecorded contract which allowed him to repurchase the property in question at his option. The opinion also noted the existence of a mortgage on the premises in favor of Benny Altman, and required its release.

The relevant portion of the Contract of Sale entered into by Ace and Altman is as follows:

"Purchaser agrees to commence construction of a building upon the above described lands, unless prevented by court order, within eighteen (18) months from the date of delivery of Deed. In the event Purchaser fails to commence construction within this eighteen (18) month period, Seller shall have the op-

tional right to tender back the amount of principal paid by Purchaser, cancel all further indebtedness and Purchaser shall forthwith reconvey the property to Seller."

Tri-Angle requested that Ace secure a Quit Claim Deed from Altman.

Subsequent to the request for the Quit Claim Deed, Ace was granted a building permit by the City of Tulsa and commenced construction of a building in an effort to comply with the conditions of the unrecorded instrument. In addition, Ace secured a mortgage release from Altman, but advised Tri-Angle that it was unable to persuade Altman to execute a Quit Claim Deed releasing any rights he might retain as the result of the unrecorded contract. Altman had executed a warranty deed to Ace dated and recorded on April 18, 1969.

On July 14, 1972, Ace, through its authorized agent attempted to return the earnest money check to Tri-Angle's agent and at the same time advised him that Ace was unable to secure title to the property. Tri-Angle, however, refused to accept the earnest money deposit and advised Ace that it considered the contract to be in full force and that Ace would be expected to meet its contractual obligations under the agreement.

Ace filed a petition for declaratory relief praying that the court declare Tri-Angle's right, title, and interest in the real property to be terminated and cancelled based upon its inability to correct title within the time prescribed in the contract, and to remove the cloud upon its title which the contract filed by Tri-Angle created.

Tri-Angle answered by denying that Ace was entitled to be released from its contractual obligations and asked for specific performance of the contract.

At the trial, Altman testified that he received no correspondence or calls for a Quit Claim Deed after June 20. His reasons for refusing to execute the Quit Claim Deed were that: his lawyer said it wasn't necessary; he felt like Ace had valid title; and that he reserved no claims

against the property. He further stated that he wouldn't say that he would not execute a Quit Claim Deed at the time of trial, but that it hadn't been brought up for discussion.

The court found that title to the real property was properly in Ace and that it had merchantable title. The court also found that the sales contract was a good and valid transaction, and that both parties had complied with its terms. The court ordered specific performance by Ace under the terms of the contract by ordering delivery of a general warranty deed to Tri-Angle.

Ace asserts that a contract for sale of real estate which provides the seller shall have 60 days within which to meet any valid objections, or so much additional time as may be agreed to in writing, expires at the end of 60 days or at the end of the agreed extension. It alleges that the purchaser cannot unilaterally grant an unlimited extension of time to the seller and thereby extend purchaser's right to purchase beyond the specified period.

■ Tri-Angle counters by alleging that the provision in the contract which provided that the seller shall have 60 days within which to meet any valid objections was clearly for the benefit of the buyer and that the seller cannot take advantage of it in an effort to avoid its contractual obligations. We agree.

■ Grounds available to the purchaser for recission are not in general available to the seller for that purpose.

Thus, in the absence of a contract provision to the contrary, the fact that there is a defect of title to the land sold does not authorize a recission by the seller, since the purchaser may insist on what the seller is able to convey. Dimmer v. Spearman, 178 So. 764 (La.1937).

■ A reasonable objection to the seller's title is a good excuse for purchaser's delay, Russell v. Ferrell, 181 Kan. 259, 311 P.2d 347, 353 (1957).

■ No effort was made after June 20 to secure a Quit Claim Deed from Altman,

nor was the purchaser notified that he made no claim against the property. Fair dealing required that Ace procure such a deed if able to do so. They did not do so, but rather based their action after June 20, not on the ground of inability, but upon the contention that the purchaser had lost the right to enforce the contract. See Brown v. Reichling, 86 Kan. 640, 121 P. 1127, 1128 (1912).

■ A party to a contract for the sale of real estate who asks for recission must himself be without fault, and when payment of the purchase money, delivery of possession and tender of a warranty deed are to occur simultaneously, they are regarded as mutual concurrent acts which disable either party from terminating the contract without performance or a valid offer to perform. Russell v. Ferrell, 181 Kan. 259, 311 P.2d 347, 353 (1957).

If the seller is truly unable to satisfy a title defect, and the purchaser refuses to waive satisfaction, then the seller is entitled to claim frustration of the contract and avoid specific performance.

■ However, a seller whose title is found to be unmarketable is not automatically in default if the defect is curable within a reasonable time after the day prescribed for performance. The seller must be put in default by the purchaser's tender of performance and a demand for merchantable title where the defective title could be cleared without difficulty in a reasonable time. See Cohen v. Kranz, 12 N.Y.2d 242, 238 N.Y.S.2d 928, 189 N.E.2d 473, 475 (1963).

The contractual provision that title is to be good and merchantable or the contract will be void and the earnest money returned is for the benefit of the purchaser, rather than the seller.

Where the purchaser, at the inception of the contract is unaware of any defect in the seller's title, he may waive full performance, elect to accept the title which the seller is able to convey, and maintain an action for specific performance. Alexander v. Abernathy, 215 Ala. 41, 108 So. 849 (1926); McKenzie v. Sutton, 250 Ala.

447, 34 So.2d 825 (1948); 13 Ala.L.Rev. 409, 419. See also Neff v. Cohen, 202 Okl. 511, 215 P.2d p. 823 infra.

To hold that this provision was inserted into the contract for the benefit of the seller would give the vendor the potential right and power to take advantage of his own wrong. Ace could defeat the contract merely by refusing to comply with the purchaser's request. See Pima Farms v. Fowler, 32 Ariz. 331, 258 P. 256, 259 (1927).

 Specific performance of a contract is not a matter of right. Its application is addressed to the sound judicial discretion of the trial court controlled by the principles of equity, Leche v. Stout, 514 P.2d 1399 (Okl.1972).

The court held in Neff v. Cohen, 202 Okl. 511, 215 P.2d 823, 825 (1950) that:

"The rule is elementary that one who contracts to sell real estate and make a good and sufficient deed thereto must do so, and if a vendor refuses, an action in specific performance may be brought compelling such vendor to do so, and lack of title will not exonerate such vendor. But a vendor may contract against any real or supposed defect in the title."

 It is the function of the trial court to weigh the evidence and determine the facts. The court made its findings in favor of Tri-Angle and based on the evidence, it found that Ace had good and marketable title. It is undisputed that although Altman refused to execute a Quit Claim Deed, he had executed a warranty deed and a release of mortgage and notified Ace that he made no claims on the property. The seller could have quieted title against Altman. The trial court's conclusions of law were proper under the facts established by the record.

Affirmed.

DAVISON, C. J., WILLIAMS, V. C. J., and IRWIN, BERRY, SIMMS and DOOLIN, JJ., concur.

LAVENDER and BARNES, JJ., dissent.