[Civil No. 2585. Filed July 11, 1927.]

[258 Pac. 256.]

PIMA FARMS COMPANY, a Corporation, Appellant, v. OSCAR G. FOWLER and MERTIE FOWLER, His Wife, Appellees.

Messrs. Kingan & Darnell, for Appellant.

Mr. George O. Hilzinger, Mr. Edwin F. Jones and Messrs. Curley & Pattee, for Appellees.

ROSS, C. J.—This suit was brought by the plaintiff, Pima Farms Company, to have a contract of

sale of a parcel of land and water to irrigate it forfeited and canceled, on the ground of certain claimed breaches thereof by the purchasers, Oscar G. Fowler and Mertie Fowler, his wife.

In the latter part of November, 1919, one Edwin R. Post, who controlled some lands near Tucson, Arizona, desert in character, but possessing great possibilities for farming purposes if furnished water, conceived the idea of promoting a farm-irrigation project, which we shall designate as the Post project, using as a basis therefor such lands and the waters thereunder. He accordingly entered into contracts with a number of persons, among whom were Oscar G. Fowler and his wife, Mertie. By the terms of the contract Post agreed to sell the Fowlers twenty acres of such land for the sum of $3,000, payable as follows: $1,200 cash, the balance of $1,800 in five yearly payments of $360 each, evidenced by five promissory notes, the first falling due on July 1st, 1921, and the others yearly thereafter. Contemporaneously, and as a part of such agreement, Post agreed to construct wells and equip them for the purpose of irrigating the lands sold to the Fowlers, and also other lands, and to have water ready for use of the vendees within six months from November 29th, 1919. Upon the execution of the contract the Fowlers paid Post $1,200, gave five notes for deferred payments, and agreed to pay the taxes on land then due or thereafter accruing, and also agreed to pay for irrigation water at prices and times as in the contract stipulated.

In the contract was a forfeiture clause to the effect that, if the Fowlers failed to pay installment notes and interest or any taxes or indebtedness for water when due they should forfeit all payments, or other things of value, paid or exchanged under the contract as liquidated damages, to Post, who should

also have the right immediately to repossess the land.

It was also agreed that, if Post was unable to deliver a deed and marketable title, or should fail to cause water to be delivered as provided in the contract, he should repay the Fowlers all moneys, and other things of value, which should constitute full restitution and full satisfaction of all his liability to the Fowlers, and entitle him to re-enter and take possession of the land.

The Fowlers, after signing the contract, and making the first payment of $1,200, entered into the possession of the land; cleared, leveled and broke it; also fenced it, and constructed some buildings, thereby enhancing its value. They also paid water rent for the season of 1920. In the meantime Post was, or became, insolvent, and was unable to deliver water, and did not do so for the season of 1920.

In October, 1920, a receiver of the Post project, including lands and irrigation system, was appointed. Thereafter, in November, 1921, under an order of the court, the receiver sold such property to one Clarence H. Lee, as trustee of Post's creditors. The creditors then organized the Pima Farms Company, a corporation, for the purpose of taking over the property from Lee, who, in December, 1921, duly conveyed it to the corporation.

This suit was begun by the Pima Farms Company to have the contract of sale made by Post to the Fowlers canceled and forfeited upon the ground of a failure and refusal of the Fowlers to perform the terms and conditions of the contract. It is alleged that the plaintiff, upon acquiring the property included in the Post project expended large sums in the development of the water system so as to enable it to furnish water to the defendants, and others entitled to water, for the irrigation of their lands— all to the knowledge of defendants—and by the

spring of 1922 was, and ever since has been, ready, able and willing to deliver water as agreed in contract, and also to deliver a deed and marketable title to the vendees. The breaches alleged are a failure to pay, or to offer to pay, water rent, or the installment notes given for purchase price as they became due. It is also alleged that defendants, by failing to demand of Post, or the receiver, or the plaintiff, the repayment to them of the $1,200 cash and their notes for deferred payments, as under the contract they might have done, and in remaining in the possession of the land claiming the right to do so under the contract, elected to continue the contract in force, so far as defendants were concerned, and estopped themselves from claiming a breach of the contract by reason of a failure to deliver water as agreed.

The defendants' answer admits a failure to pay, or to offer to pay, water rent after the first year; also a failure to pay notes for deferred payments of purchase price, but justifies such failures on the ground that Post, the receiver, and the plaintiff were unable, or not ready and willing, to deliver them irrigation water within six months' time as agreed, or at all.

By cross-complaint defendants allege the failure of the plaintiff and its assigns to deliver or to offer to deliver, irrigation water as agreed; the inability of Post to carry out his part of the contract by reason of his insolvency; the futility of making a demand upon him to repay the $1,200, paid on purchase price by defendants, or the other things of value paid to Post, or for the value of improvements placed on the land. By reason of the premises defendants asked that they be given a lien upon the land for the $1,200 cash payment, and for the value of the improvements.

The case was tried before the court without a jury; the relief asked by plaintiff being denied and that of the defendants granted. A lien on the land was established for the $1,200 advance payment and for $320 for improvements placed thereon by defendants. The plaintiff prosecutes this appeal.

We think it would tend to a clearer understanding of the different contentions to supplement the facts as above given with some others found by the court in its written findings of fact. There is no dispute or controversy about the facts. The substance of the findings, not already stated, is: That defendants took possession of the land in 1919, under the contract, and have remained in possession thereunder ever since; that they complied with and carried out and duly performed all the terms and conditions thereof by them to be performed, until the failure of Post to deliver them irrigation water in 1920, or within six months, as agreed; that they did not pay, or offer to pay for, or demand, irrigation water of Post, or the receiver, or the plaintiff during 1921, 1922, 1923, 1924 or 1925, or demand of them, or any of them, the return of the $1,200 cash payment, or payment for the value of the improvements, or their notes; that such a demand of Post would have availed them nothing, because of Post's insolvency, and that a judgment against Post could not have been collected. The allegation of plaintiff's complaint as to its ability and readiness and willingness to deliver irrigation water to defendants in the spring of 1922, and since, was found to be true, but it was also found that such fact was not communicated to the defendants, and that defendants did not know of it. It was also found that plaintiff offered to furnish water to defendants in 1922 if defendants would sign a contract with it differing from the original contract. It was also found that the plaintiff, in its first amended complaint, filed October 14th, 1929, and not

before, unconditionally offered to deliver water to the defendants. It was found that no one has re-paid, or offered to repay, the defendants the money they gave Post, or for the improvements made on premises.

In the contract was this stipulation: "Time and punctuality are of the essence of this contract."

According to the terms of the contract, if both parties thereto had punctually performed their part thereof, it would have been fully performed and discharged in 1925, defendants would have had title to land and water, and the plaintiff, or its assigns, the full purchase price agreed to be paid for land and water rights. They did not perform as agreed; the plaintiff's predecessor in interest, Post, having first defaulted when he failed to have water for land during the season of 1920. Unquestionably for such breach the defendants could have refused to com-plete the contract, and, to that end, the contract so providing, they had the absolute right to have re-quired of Post a repayment of any moneys advanced, and also the redelivery to them of the notes given for deferred payments. However, they did not take any steps to recover advance payments, or notes, and manifested no intention of doing so. They chose to let things ride over the years 1921, 1922, 1923, 1924, and until the plaintiff brought this suit. If Post had not dropped out of the picture, but had personally remained to perform his contract, and had actually performed, as his successor in interest did perform, and in 1922 had stood ready, willing and able to perform by delivery of water as per contract, it would hardly be contended that defendants could declare a forfeiture of the contract for the breach occurring in 1920. We believe it is the universal rule that a party to a contract having the option or right, because of a breach thereof by the other party, to terminate it, but who stands by and permits the

other party to go ahead doing the things required of him, will be treated as having waived the breach, and be denied the right to assign it, if sued on the contract, as an excuse for not himself performing.

But it is argued by defendants that the contract was Post's contract; that they had no contract with plaintiff; and that therefore plaintiff was under no contractual obligation to them, or they to plaintiff, and they could not compel plaintiff to perform Post's contract, nor was plaintiff, even though it occupied Post's position, entitled to enforce the contract against them. It must be remembered defendants took possession of the premises under the contract with Post, and remained in possession under the terms of such contract after its assignment to plaintiff, and with full knowledge permitted the latter to go ahead and complete the irrigation system, indicating no desire or intention to terminate it because of the breach of plaintiff's grantor. Perhaps plaintiff might have refused, upon becoming the owner of the Post project, to perform Post's contract with defendants and complete the irrigation system ready to deliver water to defendants; and doubtless defendants could have likewise, by taking proper steps, relieved themselves from the obligation of accepting title to land or paying for water; but neither party chose to take advantage of the situation thus presented and end the contract, but, on the contrary, their actions and conduct indicated a desire to have the contract performed and realization of its fruits.

This case must be decided, not on what the parties to the contract might have done, but upon what they actually did. Plaintiff accepted the Post project burdened with Post's contracts. Appreciating that fact, it appears the plaintiff took up the work of completing the irrigation system, expending large sums of money in connection therewith, and by the

spring of 1922 was ready, willing and able to deliver water to defendants. While defendants under the terms of the contract might have made the failure to deliver water in 1920 and 1921 the basis of a refusal to go on with the contract, and been justified therein, they did not do so. The law compelling the plaintiff to accept the project burdened with Post's contracts will give plaintiff the benefits of such contract as would have accrued to Post if he, instead of plaintiff, had performed after the breach and before notice of intention to terminate on that account.

The contract makes time of the essence of the agreement. In effect, it provides that, if either party fails to punctually perform, as he has therein agreed to perform, the other may refuse to perform, and in such contingency it provides the method and terms of adjusting their rights.

One provision is to the effect that, if Post should fail to cause water to be delivered to the defendants within six months after date of contract he should repay defendants what they had paid him in money and notes, whereupon they should give him possession of premises. This provision was in favor of defendants or the vendees. To hold it was inserted in the contract for Post's benefit would give him the right and power to take advantage of his own wrong. He could defeat the contract merely by wilfully and wrongfully refusing to deliver water within the agreed six months, even though the supply was ample. Being therefore inserted for the benefit of the vendees, they could, if they so desired, waive its performance, and we hold that they did waive it by failing to demand such repayments.

There were other provisions of the contract inserted for the benefit of Post, such as a right to terminate it for failure to pay notes when due or to accept and pay for water when ready for delivery. These provisions were available to Post's grantee,

the plaintiff, and likewise could be, and were, waived by it, it having made no demand upon defendants to make such payments until long after they became due and payable; and in not having, although ready, able and willing to furnish water, tendered it to defendants under the terms of the contract.

Under the law, the suit by plaintiff cannot be maintained, nor are defendants in a position to enforce a lien upon the land for the money paid to Post or for the value of the improvements placed upon the premises.

In *Stark* v. *Norton*, 24 Ariz. 454, 211 Pac. 66, this rule was laid down, and we think it applicable to the facts of this case.

"It is a rule of general application that where time is made of the essence of a contract of sale the failure to pay the purchase price, or any installment thereof, gives the vendor the right to declare a forfeiture of the contract. . . . But it is equally well settled that such right must be clearly established, and that it can be waived by the vendor, since the essence clause is inserted for his benefit and its observance is in no sense essential to a continuation of the other provisions of the contract. . . .

"The essence clause having been waived, they were powerless to forfeit the contract for failure to meet the installments until it had again been made a part of that instrument, and this could only be done by appellants' giving appellees notice that after a certain date, allowing a reasonable time, they would be required to meet the payments as called for in the agreement."

This contract was considered by us in *Davis* v. *First National Bank of Oakland*, 26 Ariz. 621, 229 Pac. 391, and we there said of the provision entitling the vendee to recover back from Post his notes given for the purchase price of land:

"We conclude that the import of this part of the contract is that, if the contract is broken [by Post]

before the note is paid, the maker of the note is entitled to demand and receive back his note and mortgage,"

—thereby indicating that we then thought the provision was inserted for the benefit of the vendee, or was of such a nature as to require some affirmative action on his part.

Some point is made by defendants of the fact that plaintiff, in the spring of 1922, wanted them to sign another and different water contract before delivering them water. This act upon the part of the plaintiff was not a refusal to deliver under the original contract; the court having found that the plaintiff at that time was ready, able and willing to deliver under such contract. At all events, there can be no question but that defendants could have, in a proper action, compelled the plaintiff to deliver them water as per the agreement with Post. *Edinburg Irr. Co.* v. *Paschen* (Tex. Civ. App.), 223 S. W. 329, affirmed by Supreme Court, 235 S. W. 1088.

It follows that neither the plaintiff nor the defendants are in a position to terminate the contract. The essence clauses, those for the benefit of the plaintiff, and those for the benefit of the defendants, having been waived by them, they are powerless to terminate the contract, and before either of them may do so he must give the other notice that, after a certain date, allowing a reasonable time, he will be required to perform as in the contract provided.

The order of the court is that the judgment be reversed and the cause remanded, with directions that the complaint and cross-complaint be dismissed; that the plaintiff recover its costs in this court, and the defendants the costs in the trial court.

LOCKWOOD and McALISTER, JJ., concur.