Opinion by
Mr. Justice Moore.
The parties are here in inverse order from their appearance in the trial court, and we refer to the plaintiff in error as the defendant, or by name, and to the defendants in error as plaintiffs or by name.
Plaintiffs brought the action in the district court of the City and County of Denver for specific performance of a contract for the sale and purchase of three parcels of land situated in Adams county, Colorado, each of which is identified by long and detailed metes and bounds descriptions. Plaintiffs were successful in the trial court, and the defendants by this writ of error seek to reverse the judgment and decree of specific performance.
The contract in question was signed jointly by the defendant and seven other persons, each of whom owned an undivided one-eighth interest in the lands to be sold. Generally, it was provided in the contract that the sellers would convey to the plaintiffs and the plaintiffs agreed to purchase the lands therein described for a total pur *309 chase price of $40,000. Payment was to be made as follows:
“$1000.00 at the time of the signing of this agreement, which sum is part payment for the total purchase price, the receipt whereof is hereby confessed and acknowledged.
“$19000.00 in cash to be paid at the time of the delivery of a good and sufficient Warranty Deed conveying the said premises free and clear of all liens and encumbrances, except R.O.W. and easements of record.
“$20000.00 to be evidenced by a Promissory Note signed by the parties of the Second part, bearing no interest, payable on or before March 15, 1962, to be secured by a Deed of Trust on said premises.”
Other parts of the contract which are pertinent to the issues herein are:
“4. Parties of the first part hereby agree to furnish an Abstract of Title to said property certified to date, or a title insurance policy as evidenced by a title commitment in an amount equal to the purchase price at Buyer’s option and expense, shall be furnished on or before December 28, 1961.
“5. Title shall be merchantable in the sellers. Upon payment or tender as above provided and compliance with the other terms and conditions hereunder by the purchasers, the sellers will execute and deliver a good sufficient Warranty Deed to said purchasers on or before the 15th day of January, 1962, conveying said premises free and clear of all taxes, including special assessments now installed, whether assessed or not, liens and encumbrances except ROW’s, ditches, etc., except the General Taxes for the Year 1961 payable in 1962, and taxes for 1962 shall be prorated on the basis of the taxes for the year 1961.
“Time is of the essence hereof, and if any payment or any other condition hereof is not made, tendered or performed by the purchasers as herein provided, then this agreement shall be null, void and of no effect, *310 and both parties hereto released from all obligations hereunder, and all payments made hereon shall be retained by the said Parties of the first part as liquidated damages:
“In the event the sellers refuse to approve this agreement in writing, or in the event title is not merchantable and written notice of defects is given to the sellers within the time herein provided for delivery of deed, and shall not be rendered merchantable within 30 days after such written notice, then, this agreement, at buyers’ option, shall be void and of no effect, and each party shall be released from all obligations hereof and the payment made hereunder shall be returned forthwith to the purchasers upon return of the abstract to seller.”
Plaintiffs alleged that the sellers furnished them with an abstract of title. The evidence shows that it was delivered after December 28, 1961, the date upon which it was due under the contract. They further alleged that after the delivery of the abstract it was discovered that the description of one parcel of the land to be conveyed was erroneous and it became necessary to have a survey made for the purpose of obtaining a correct legal description. This fact is not denied. Plaintiffs further alleged that upon correction of the legal description it was found that record title to the one-eighth interest of Millie Saccomano was defective in that she acquired title through the will of her deceased husband and her interest had not been listed as an asset in his estate, and no release from inheritance tax had ever been procured.
Plaintiffs further alleged and there is ample evidence to prove that on February 1, 1962, they verbally informed the defendant of this defect and explained what would be necessary to perfect the title to her one-eighth interest in the land. It is not controverted that the plaintiffs were willing to proceed with the deal by withholding from her share of the payment due the sum of $250 for the purpose of clearing the title. The *311 defendant, however, elected to have her own attorney correct the defect in the title. The date for closing the sale was thereupon continued until April 1, 1962.
Plaintiffs alleged, and it is not denied, that on February 7, 1962, they furnished to defendant’s attorney at his request the correct legal description of the property to enable him to comply with the requirements that the title be made marketable; and that on March 14, 1962, defendant’s attorney notified them by letter that the defendant “was not interested in selling her one-eighth in the property, that she had not signed any extension agreement concerning the sale and purchase of the property.” Plaintiffs further alleged that on numerous occasions between February 7,1962 and March 14, 1962, defendant’s attorney informed their attorney that he was proceeding with the filing of the Inheritance Tax Application and that it would be available within a short time.
Plaintiffs also alleged that upon receipt of the notice of defendant’s refusal to consummate her agreement to sell, and on March 15, 1962, they tendered payment of $4976.59 by certified check to the defendant, which represented the amount due her less adjustment for revenue stamps; taxes, and other incidentals, and defendant refused to accept payment and refused to sign a deed tendered to her. Plaintiffs further alleged that all other persons, named as sellers executed a deed for their respective shares of the property on March 16, 1962. They offered to pay defendant the purchase money due pursuant to the terms of the agreement and demanded specific performance.
By way of answer to the complaint defendant admitted that she had not cleared the title by procuring a release of inheritance tax; that her one-eighth interest had not been inventoried as part of her husband’s estate; and that she so informed plaintiffs’ attorney prior to signing the agreement of December 18, 1961. She also admitted that she informed the plaintiffs that she would *312 have her attorney handle whatever legal matters were necessary to correct her title to her interest in the property, and admitted the tender of $4,976.59 as alleged by the plaintiffs.
By way of affirmative defense defendant alleged that plaintiffs failed to comply with the terms of the agreement of December 18, 1961; that by tendering an extension agreement on February 1, 1962, which she refused to sign, they are estopped from enforcing the agreement; and also that there was no consideration for the execution of the contract of purchase and sale.
The thrust of defendant’s argument for reversal of the judgment is that she elected to declare the contract void for the reason that the plaintiffs gave no “written notice of defects” in title to her, as required under the following language in the contract:
“* * * in the event title is not merchantable and written notice of defects is given to the sellers within the time herein provided for delivery of deed, and shall not be rendered merchantable within 30 days after such written notice, then, this agreement at buyers’ option, shall be void and of no effect, and each party shall be released from all obligations hereof and the payment made hereunder shall be returned forthwith to the purchasers upon return of the abstract to seller.”
That clause gave to the buyers a right to declare the contract void; it did not give the seller such a right. The buyers in this case are not attempting to void the contract.
Counsel for the defendant further contends that time being “of the essence,” as provided in the contract, and plaintiffs having failed to tender the amount due defendant on or before January 15, 1962, there was a breach on the part of the plaintiffs and that by reason thereof the defendant could refuse to perform. In this connection the record discloses that in accordance with the contract the plaintiffs were to pay, in addition to the $1,000 paid upon signing the contract, an additional *313 $19,000 “at the time of the delivery of a good and sufficient Warranty Deed conveying said premises free and clear of all liens and encumbrances, except R.O.W. and easements of record.” No deed was delivered by any of the sellers until March 16, 1962, and then only by the seven other sellers. Moreover, defendant and all the other sellers were never in a position to deliver a deed free and clear of all encumbrances — first by reason of an erroneous description of the real estate to be conveyed, and secondly because of the defect in title to which reference is made above. It was the sellers, more particularly the defendant, who were at all times in default under the terms of the contract.
 A tender of the amount due on January 15, 1962, and a note and trust deed covering the remaining $20,000 of the agreed price for the lands, under the circumstances of this case would have been an idle gesture. Admittedly, the defendant was not able to perform as of that date and led everyone to believe that she would endeavor to correct the defects which prevented full performance on her part and which alone caused the delay. It is an ancient and well established maxim that equity does not require the doing of a vain and useless thing as a prerequisite to obtaining equitable relief. Velsicol Corp. v. Hyman, 103 F. Supp. 363; Gaskins v. Bonfils, 8 F. Supp. 832; Cohen v. Public Housing Administrator, 257 F.2d 73.
In Linch v. Game and Fish Commissioner of Colorado, 124 Colo. 79, 234 P.2d 611, this court said:
“* * * A vendor in default for failing to furnish a good title may not terminate the rights of the purchaser. Price v. Immel, 48 Colo. 163, 109 Pac. 941. We quote the following from 66 Corpus Juris page 758, section 341: ‘To entitle the vendor to avoid the contract he himself must not be in default. So, too, he is not entitled to rescind or forfeit the contract for a default of the purchaser unless he is able to perform in accordance with the terms of the contract.’ The fact that time *314 was made as of essence of the contract does not permit a forfeiture by one who himself is in default. * * *”
There is no merit to the argument that the plaintiffs cannot recover because of the Statute of Frauds. No issues were framed based upon a violation of that statute. To be available as a defense it must be raised in the pleadings, and cannot be urged for the first time in this court on writ of error. Rivera v. Queree, 145 Colo. 146, 358 P.2d 40; Ochsner v. Langendorf, 115 Colo. 453, 175 P.2d 392.
The judgment is affirmed.
Mr. Justice Frantz and Mr. Justice Schauer concur.