YOST FARM COMPANY, a corporation, Plaintiff and Respondent, v. LEO CREMER, Jr., Defendant and Appellant.

No. 11459.

Decided December 4, 1968. Rehearing denied December 30, 1968.

447 P.2d 688.

Arthur P. Acher, Rankin & Acher, Helena, John P. Acher (argued), Missoula, for defendant and appellant.

Franklin S. Longan (argued) Longan & Holmstrom, Billings, for plaintiff and respondent.

MR. JUSTICE HASWELL delivered the opinion of the Court.

This is an appeal by a purchaser of land from a decree

requiring him to convey his interest in the land to and quieting title in a prior contract purchaser. The cause was tried in the district court of the sixth judicial district before the Honorable Victor H. Fall, presiding judge, without a jury.

This case involves a half section of farmland in Sweet Grass County which had been leased for many years prior to the purchase contract in question by plaintiff Yost Farm Company, hereafter called Yost or purchaser, from John and Ernest Brennemann and after their deaths from their heirs, Mrs. Warren Bradbury, Mrs. Kendall Getman, and Mrs. Carl Reimuller, the original defendants in this case. On May 2, 1961, Yost, as purchaser, and Mrs. Bradbury, Mrs. Getman, and Mrs. Reimuller, as sellers, entered into a contract entitled "Receipt and Agreement to Sell and Purchase" whereby Yost agreed to purchase and the three women agreed to sell the land in question under the terms contained in the contract.

Broadly speaking, the contract contained the following terms: (1) The total purchase price was $10,000, payable $500 down as a part payment and earnest money at the time of execution of the contract and the balance of $9,500 payable as follows: $2,500 upon evidence of merchantable title, with the balance payable in annual installments in specified amounts with the final payment on July 1, 1964; (2) The sellers were to furnish purchaser an abstract of title or title insurance; (3) If sellers' title was not merchantable and could not be made so within a reasonable time after written notice by purchaser of defects, the earnest money would be returned to purchaser and all his rights under the contract terminated unless he elected to waive the defects and accept such title as sellers had; (4) If sellers' title was merchantable or insurable and purchaser did not complete the purchase, the earnest money would be retained by sellers and the contract would be at an end.

At the time of execution of the contract, Yost made the

$500 initial payment. Thereafter sellers' attorney began checking into the status of the title to the land and determined that legal proceedings would be necessary to render the title merchantable. Conversations and correspondence followed between sellers' attorney and purchaser's attorney regarding the title, eventually culminating in an offer by sellers to convey such title as they had to purchaser under the contract. This offer was refused by purchaser. Subsequently sellers' attorney notified purchaser's attorney that the contract was terminated and refunded the $500 to purchaser.

According to the determination made by sellers' attorney the defects in the title were (1) absence of ancillary probate proceedings in Montana continuing the chain of title to the three women, and (2) a 1/6 interest in the property was held by one Bessie Brennemann who was not a party to the contract. No abstract or title insurance was ever furnished purchaser.

On December 17, 1962 Yost filed suit against Mrs. Bradbury, Mrs. Getman, and Mrs. Reimuller to specifically enforce the purchase contract. Thereafter in April, 1963, Leo Cremer, Jr., hereafter called Cremer, acquired title by quitclaim deed from the three women named as defendants in the suit and from Bessie Brennemann, the purported owner of a 1/6 interest in the property. Subsequently he was substituted as the sole party defendant. A supplemental complaint was filed covering events that occurred after the filing of the original complaint.

Trial was had on July 20, 1967. Judge Fall subsequently entered findings of fact, conclusions of law, and judgment favorable to Yost. The gist of the findings of fact and conclusions of law was: (1) that no abstract, title insurance, or evidence had ever been furnished Yost, (2) that no fractional ownership in Bessie Brennemann had been proved, (3) that Cremer purchased the land with notice of the purchase contract with Yost (4) that Yost's contract was specifically en-

forceable, (5) that Yost should deposit the full purchase price with the clerk of court, that Cremer should deposit a quitclaim deed with the clerk thereafter, and that a quiet title decree should be granted Yost in the absence of furnishing him an abstract or title insurance. Judgment was entered accordingly.

After denial of Cremer's motion for new trial and amendment of the court's findings of fact and conclusions of law, Cremer appealed from the judgment and order denying new trial.

Cremer presents the following issues for review upon this appeal: (1) Did purchaser's rights under the contract terminate upon its refusal to accept such title as sellers had? (2) Was sellers' obligation to furnish an abstract of title a "useless act" not requiring performance? (3) Was sellers' title merchantable? (4) Is purchaser entitled to specific performance of the purchase contract? (5) Is purchaser entitled to a decree quieting title?

At the outset we note that the parties to this appeal have treated the obligations of Cremer as co-extensive with the obligations of Mrs. Bradbury, Mrs. Getman, and Mrs. Reimuller under the purchase contract. No issue has been raised upon this appeal concerning the enforceability of Yost's rights under the purchase contract against Cremer. We shall treat this appeal accordingly.

Directing our attention to the first issue presented for review, it is Cremer's contention that the contract did not obligate the sellers to perfect their title. Hence when purchase refused to accept the sellers' title as it was and was refunded his $500 earnest money and partial payment, the contract was at an end and the purchaser had no further rights thereunder.

Let us examine the language of the contract. The sellers agreed to sell the half section of land to the purchaser for a fixed price payable on specified terms. Payment terms on

the balance of $9,500 are set forth in the following contract language: "An additional $2,500 in cash upon evidence of merchantable title. The balance of the purchase price in the amount of $7,000.00 is to be carried by the seller on a Contract for Deed. Payments are to be made as follows: $3,000.00 plus Interest July 1, 1962, $3,000 plus Interest, July 1, 1963, $1,000 plus interest, July 1, 1964". Sellers agreed to furnish purchaser an abstract of title or tile insurance by the following language in the contract: "It is further agreed: Seller shall at his expense furnish Purchaser an Abstract of Title continued to a date subsequent hereto showing merchantable title to the above described property vested in Seller, or in lieu thereof, at Seller's option, a title insurance policy insuring title thereto vested in Purchaser, free and clear of all liens and encumbrances, except No exceptions." The contract further provided that "The real property is to be conveyed by Contract for Deed with Warranty Deed in Escrow."

The following provision in the contract governs the rights of the parties concerning any defects in the title: "* * * if Seller's title is not merchantable or insurable and cannot be made so within a reasonable time after written notice containing statement of defects is delivered to Seller, then said earnest money herein receipted for shall be returned to the Purchaser on demand and all rights of Purchaser terminated unless Purchaser waives said defects and elects to purchase * * *" The sellers signed the agreement to sell and convey on these terms.

It is clear from the plain language of the contract that the sellers agreed to sell and convey by warranty deed the entire ownership of the land, not a fractional ownership interest. They also agreed to furnish a merchantable title as shown by an abstract of title, or in lieu thereof, a title insurance policy. Only in the event (1) that their title could not be rendered merchantable or insurable within a reasonable time after statement of defects was furnished them by the pur-

chaser, and (2) the sellers were unwilling to waive the defects in the title, were they given the right to refund the earnest money and terminate the purchaser's rights under the contract.

In the instant case, the furnishing of an abstract of title was a condition precedent to any further performance by purchaser. Brown v. Griffin, 150 Mont. 498, 436 P.2d 695. Determination of defects in the title and the giving of notice thereof to sellers rests initially with the purchaser under the terms of the contract. Here no abstract was ever furnished purchaser to enable him to make an initial determination of defects in the title, give notice thereof to sellers, or give sellers an opportunity to correct such defects as purchaser deemed material. Instead sellers attempted to compel purchaser to accept their determination of the condition of the title without furnishing him an abstract. This sellers cannot do.

Therefore sellers' right to terminate the contract upon purchaser's refusal to accept their title never matured. The contract remained valid and enforceable according to its terms. The district court so found in its Conclusion of Law I:: "That the contract entered into by the Yost Farm Company, dated May 2, 1961, being plaintiff's Exhibit 2, is a valid contract and has never been abrogated nor its provisions denied by the plaintiff herein and that plaintiff is entitled to enforce the same against defendant."

Next Cremer contends that the furnishing of an abstract of title to the purchaser is a "useless act" and as such is not required of sellers as a condition precedent to terminating the contract. The basis of this contention is that the defects rendering sellers' title unmerchantable arise by reason of the death of predecessors in title whose estates were not probated in Montana and consequently would not appear in any abstract of title.

Here again sellers are attempting to compel purchaser to accept their determination of the merchantability of the title

and defects therein in lieu of furnishing purchaser an abstract to enable him to make his own determination. In the instant case if sellers' title was in fact unmerchantable because no ancillary probate proceedings in Montana were had in the estates of sellers' predecessors in the chain of title, the purchaser can determine from an abstract how serious the defects are to his mind, the time and cost involved in corrective action, whether the title can be rendered insurable without legal proceedings, and whether he wishes to waive the defects. Surely the contract does not require him to arrive at these decisions without an abstract, relying completely on sellers' representations concerning the condition of the title and defects therein!

■ For the foregoing reasons, the furnishing of an abstract is not a "useles act" excusing performance by sellers, but on the contrary is a material condition precedent that requires performance by sellers prior to any termination of the contract.

■ The third issue assigned for review is the merchantability of sellers' title. Cremer claims that sellers' title was in fact unmerchantable, that sellers were not required to perfect it, and upon refusal of the purchaser to accept such title as sellers had the sellers could and did terminate the contract. Much of what has heretofore been said concerning the first issue assigned for review is equally applicable here. The only additional comment necessary is to point out that the unmerchantability of sellers' title, standing alone, does not excuse performance of the contract on their part. The contract specifically provides that "if Seller's title is not merchantable or insurable *and cannot be made so within a reasonable time after written notice containing statement of defects is delivered to Seller"*, then sellers can refund the earnest money upon *demand by purchaser* and purchaser's rights under the contract are at an end. (Emphasis supplied.) Accordingly, the merchantability of sellers' title is not material to determination of this appeal.

The next issue assigned for review is whether purchaser is entitled to specific performance of the contract. Cremer argues that the trial court could not decree specific performance because the sellers owned less than the entire ownership interest oin the property and the purchaser refused to accept anything less than merchantable title.

This argument is bottomed on the proposition that the sellers had no obligation under the contract to convey anything to purchaser except such title as they had. For the reasons heretofore set forth, this is incorrect. The parties bargained and contracted for a sale and conveyance of the entire ownership interest in the land with a merchantable title. The purchaser cannot be required to accept less than this, and his purchase rights under the contract are specifically enforceable. The district court correctly so found.

The final issue presented for review is whether the purchaser is entitled to decree quieting title. The judgment provides, among other things: "IT IS FURTHER ORDERED, ADJUDGED AND DECREED That the defendant, within 60 days from the date hereof, deliver to the Clerk of the Court an abstract of title or title insurance to the property herein described, prepared at his own cost, to May 2, 1961, inclusive, or in lieu thereof, the court hereby quiets the title in the plaintiff against the defendant and all of the predecessors in interest of the defendant, effective upon the date the Deed is delivered to the plaintiff by the Clerk."

In his pleadings, the purchaser asked the court to quiet title in him to the lands involved and offered to accept a decree quieting title in lieu of an abstract or title insurance.

The thrust of Cremer's argument is that the court could not properly enter a decree quieting title because Bessie Brennemann, who was neither a party to the contract or to the contract or to the suit, had a potential partial ownership interest in the land.

Conceding, arguendo, that Bessie Brennemann did own

a 1/6 interest in the land (which the district court found was not proved in the instant case), she conveyed whatever interest she had by quitclaim deed to Cremer prior to his substitution as sole party defendant herin. Bessie Brennemann no longer had any interest in the land and was not required to be joined as a defendant in order to quiet title. And as the purchaser's contract rights to the land were specifically enforceable against Cremer, it is immaterial that Bessie Brennemann was not a party to the contract. The court had before it the one party claiming adversely to the purchaser and could properly quiet the title as against him and his predecessors in interest.

Additionally, it appears that the court is merely using the device of quieting title against Cremer and his predecessors under whom he claims title as a practical substitute for the abstract of title or title insurance required by the contract. The purchaser offered to accept such decree in lieu of an abstract or title insurance. Cremer is in no position to complain because he purchased the land with notice of the purchase contract with Yost. Hence he is not an innocent purchaser without notice but purchased subject to Yost's prior contract rights.

We have considered all other arguments raised by Cremer and all supporting authorities cited and consider them to be without merit.

The judgment of the district court is affirmed. This cause is remanded to the district court for such further proceedings as may be proper to enforce such judgment.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR and CASTLES concur.