608 P.2d 64

**Tom HUM and Josephine Hum, husband and wife, Plaintiffs/Appellants,**

v.

**Arthur PINNER and Elizabeth Pinner, husband and wife; Santa Cruz Ranch, Inc.; Clyde Watson and William Watson, Defendants/Appellees.**

**No. 2 CA–CIV 3286.**

Court of Appeals of Arizona,
Division 2.

Jan. 14, 1980.

Rehearing Denied Feb. 13, 1980.

Review Denied March 4, 1980.

Molloy, Jones, Donahue, Trachta, Childers & Mallamo, P.C. by John F. Molloy and Tobin Rosen, Tucson, for plaintiffs/appellants.

Chandler, Tullar, Udall & Redhair by Thomas Chandler, Tucson, for defendants/appellees Pinner & Santa Cruz Ranch.

Hirsch & Lindamood, P.C. by W. James Harrison, Tucson, for defendants/appellees Watson.

## OPINION

HOWARD, Judge.

Arthur and Elizabeth Pinner own all the capital stock in Santa Cruz, Inc. The main asset of the corporation is a 1,240-acre ranch located near Marana, Arizona. The Watsons leased the ranch from the corporation. Their lease gave them the right to renewal and also a right of first refusal on any sale of the ranch.

The Hums entered into a contract with the Pinners (stockholders) to buy all their stock in the corporation. Their agreement contained, inter alia, the following provisions:

### ARTICLE II

"K. That if title to the real property in Exhibit B be unmarketable at the time of closing, thirty (30) days from the time of closing will be given STOCKHOLDER to perfect same. If said title is not perfected within said time, and after a good faith effort by STOCKHOLDER to perfect same to PURCHASER, then PURCHASER may elect to close transaction by waiving the defect, but if the PURCHASER does not elect to close any monies deposited into escrow by PURCHASER shall, upon demand of PURCHASER, be returned to PURCHASER and this contract cancelled. STOCKHOLDER shall be liable for any cancellation charges levied by the title company in the event of such cancellation."

"It is expressly agreed between the parties that STOCKHOLDERS [sic] obligations hereunder are conditioned upon the lessee Watson not exercising their rights to purchase the real estate described in Exhibit B, if such rights exist."

An addendum to this contract provided:

"1. Purchasers agree to honor that certain lease agreement made and entered into the third day of July, 1975, between Santa Cruz Ranch as lessor, and Watson Farms as lessee.

2. Purchasers acknowledge that Watson Farms may have a right to exercise an option to purchase the assets of Santa Cruz Ranch.

3. In the event of any litigation that may be commenced between Santa Cruz Ranch and Watson Farms resulting from any action or lack of action prior to the time PURCHASERS have control of the corporation, STOCKHOLDERS shall hold PURCHASERS harmless for all expenses pertaining to such litigation. After close of sale, PURCHASERS will be responsible for all acts of corporation."

Before the sale could be closed, the Watsons filed an action for declaratory relief in the Pima County Superior Court and filed a lis pendens. The Watsons asked the trial court to declare their rights and find that they had validly renewed the lease and were thus entitled to exercise their option to buy the land as stated in their lease.

The Hums then filed this action for specific performance asking the court to find that the Watsons had no interest in the land or stock of the corporation and requiring the Pinners to convey the stock of the corporation to them. The two lawsuits were consolidated for trial. An attorney testifying as a witness for appellees stated that because of the lawsuit filed by the Watsons, title could not be perfected within the 30 days set forth in the contract.

The trial court found that the contract between the Hums and the Pinners gave the Hums only two alternatives. At the expiration of the thirty days set forth in the contract the Hums could either waive the defect and close the purchase or demand that the contract be cancelled and the downpayment[1] be returned to them. Since the Hums did neither, the trial court awarded appellees judgment against appellants and attorneys' fees. No judgment was ever entered in the suit by Watson against the Pinners and Santa Cruz Ranch, Inc.

It is appellants' position that subparagraph K is not exclusive, is for their benefit only and does not prevent them from bringing an action for specific performance. In support of this contention appellants rely on the following cases: *Pima Farms Co. v. Fowler*, 32 Ariz. 331, 258 P. 256 (1927); *Saccomano v. Palermo*, 159 Colo. 307, 411 P.2d 22 (1966); *Moore v. Sterling Warner Industrial Invest. Corp.*, 114 N.H. 520, 323 A.2d 581 (1974); *Ace Realty, Inc. v. Looney*, 531 P.2d 1377 (Okl.1974); *Wittick v. Miles*, 274 Or. 1, 545 P.2d 121 (1975). We do not find these cases to be apposite.

The provision at issue in *Saccamano v. Palermo*, supra, states:

" ' * * * in the event title is not merchantable and written notice of defects is given to the sellers within the time herein provided for delivery of deed, and shall not be rendered merchantable within 30 days after such written notice, then, this *agreement at buyers' option, shall be void and of no effect,* and each party shall be released from all obligations hereof and the payment made hereunder shall be returned forthwith to the purchasers upon return of the abstract to seller.' " (Emphasis added) 411 P.2d at 25.

Not only is the language of this provision different from ours, it gives the right to void the agreement to the buyer and not to the seller.

In *Wittick v. Miles*, supra, the issue was whether the parties had agreed that the termination of an existing leasehold was a condition precedent to the validity of an earnest money agreement. This case does not involve the interpretation of contractual language similar to that involved in the Hum-Pinner contract.

The contract in *Ace Realty, Inc. v. Looney*, supra, provided:

" '1. Seller within 20 days after approval of this contract shall furnish purchaser an abstract of title certified to date, showing a good and merchantable title in the seller, subject to easements, building restrictions of record and the above mortgages, if any. Purchaser shall have 30 days thereafter in which to have

---

1. The Watsons counterclaimed against Hum for wrongfully inducing a breach of contract.

The trial court found against the Watsons on their counterclaim.

the abstract examined and furnish seller notice in writing of any objections thereto. In case of valid objections to the title, seller shall have 60 days or such additional time as may be agreed to in writing to meet same. *In the event the title cannot be perfected and same is not insurable, . . . the above part payment on the purchase price shall be returned to the purchaser and this contract shall be of no further force and effect.*

2. If no objections are made within the time above specified or, if made, when same have been met, seller shall deliver a properly executed general warranty deed conveying the above property to purchaser to the undersigned realtor for delivery to purchaser upon payment of the balance of the purchase price in the manner hereinabove provided.' " (Emphasis added)

The court stated that the foregoing provision did not allow the seller to rescind the contract if it could not perfect the title within the time provided because (1) the purchaser may insist on what the seller is able to convey, i. e. he may want to take the title with the defect; (2) a party to a contract for the sale of realty who asks for rescission must himself be without fault; (3) a seller whose title is found to be unmarketable is not automatically in default if the defect is curable without difficulty within a reasonable time after the day prescribed for performance; and (4) the contractual provision that title is to be good and merchantable or this contract will be void and the earnest money returned is for the benefit of the purchaser rather than the seller.

The court in *Ace Realty* found that the seller could have easily cured the defect by filing a quiet title action which would have been uncontested. We find the contractual provision in *Ace Realty* and the facts of the case to be significantly different from ours.

*Pima Farms v. Fowler*, supra, cited by *Ace Realty*, stands for the proposition that a provision similar to the one in *Ace Realty* cannot be construed to be for the benefit of the seller because such a construction would allow the seller to defeat the contract merely by refusing to comply with the purchaser's request. Such reasoning does not apply to the Hum-Pinner contract because subparagraph K requires the seller to make a good faith effort to perfect the title.

*Moore v. Sterling Warner Industrial Investment Corp.*, supra, is not on point because the provision at issue there is not the same as ours.

Our research has led to the case of *Yost Farm Company v. Cremer*, 152 Mont. 200, 447 P.2d 688 (1968). The provision therein was very similar to ours:

" ' * * * if Seller's title is not merchantable or insurable and cannot be made so within a reasonable time after written notice containing statement of defects' is delivered to Seller, then said earnest money herein receipted for shall be returned to the Purchaser on demand and all rights of Purchaser terminated unless Purchaser waives said defects and elects to purchase * * *.' " 447 P.2d at 691.

The court stated that under these terms the seller could terminate the contract if the purchasers were unwilling to waive the defect in the title.[2]

We do not believe that the contract here contains an absolute and unqualified agreement by one party to sell and the other party to buy real estate with a good and sufficient title. Subparagraph K governs the rights of the respective parties in the event the sellers should be unable to give a good title. This paragraph means that if it turns out that, after a good faith effort by the sellers, they are unable to perfect the title, the buyers must take the title with the defects, if they want the property. But, if they do not choose to do so, the contract is

2. There is an obvious misprint in the opinion at 447 P.2d at page 691 where the court says that only in the event ". . . the *sellers* were unwilling to waive the defects in the title, were given the right to refund the earnest money and terminate the purchaser's rights under the contract." (Emphasis added)

cancelled and they get their money back. Since the Hums did not waive the defects, they are entitled to a return of any money deposited in escrow and no more.

Appellants also contend that the trial court erred in awarding appellees attorneys' fees. Their argument on this issue rests upon a finding by us in their favor. We do not so find.

Affirmed.

HATHAWAY, C. J., and RICHMOND, J., concur.