Burke, J.
On September 22,1959 plaintiff contracted to purchase defendants’ one-family house in Nassau County for $40,000. Four thousand dollars was paid on the signing of the contract and the balance due upon delivery of the deed was. in the form of $24,500 cash and the assumption of an $11,500 first mortgage. Closing was set for November 15. Plaintiff obtained an adjournment of the closing date to December 15 without any indication that title would be rejected. On November 30, plaintiff’s attorney sent defendants’ attorney a letter stating: “ An investigation has disclosed that the present structure of the premises is not legal and thus title is unmarketable. Unless a check to the order of Lester Cohen, as attorney in fact, for Sarah Cohen is received in five days, we shall be obligated to commence proceedings against your client.”
Plaintiff’s attorney appeared at the office of defendants’ attorney on the adjourned law date and demanded return of the $4,000 deposit, which was refused by the latter. Neither party was then able to perform and neither made any tender. Plaintiff thereafter commenced this action for return of the deposit plus the costs of searching title; defendants counterclaimed for damages for breach of contract.
*245 Trial Term, Nassau County, gave judgment for plaintiff. The court found that the premises were subject to protective covenants filed in the Nassau County Clerk’s office and that the insurability clause of the contract was not complied with because a swimming pool on the premises, installed under a permit, lacked a certificate of occupancy from the Oyster Bay Architectural Control Committee. Further, a split rail fence projected beyond the front line of the dwelling. The court also found that plaintiff had notified defendants of the claimed defects prior to the December 15 closing date and that defendants had taken no steps to remedy the defects, nor had it been established that the violations were minor. The court held, therefore, that the defective title excused plaintiff from tender of payment and awarded plaintiff judgment in the amount of her deposit.
The Appellate Division, Second Department, unanimously reversed Trial Term on the law and facts and directed judgment on the counterclaim for $1,500. It is from this judgment that plaintiff appeals.
In reversing Trial Term’s findings of fact, the Appellate Division expressly found that plaintiff’s letter of November 30 rejecting title and demanding return of the deposit failed to specify the claimed illegality, and that specific objections to title were not raised until January 25, 1960. The letter speaks for itself and the Appellate Division is obviously correct. Plaintiff’s arguments directed at the Appellate Division’s finding of January 25th as the date when specific objections were first communicated to defendants are unavailing inasmuch as the earliest further communication of objections supported by the evidence took place upon the commencement of this action by plaintiff on December 31st, still more than two weeks after the law date. It was also found, contrary to the trial court, that the objections to title were curable upon proper and timely notice and demand. We think the weight of the evidence supports the Appellate Division here too. The swimming pool was constructed with a permit and lacked only a certificate of occupancy (which was in fact obtained before defendants sold the house to a third person). The fence projection likewise could clearly be found to be a readily curable objection. These were the only two objections that possibly violated the ‘1 Declaration of Pro *246 tective Covenants ” recorded in the Nassau County Clerk’s office and to which the title insurer excepted.
The Appellate Division also found that defendants had not waived a tender by plaintiff and that plaintiff’s rejection of title in advance was a default precluding her from recovery of the deposit. Since it is undisputed that defendants made no tender, the Appellate Division’s award of damages for breach of contract necessarily implies that no such tender was required. We agree.
While a vendee can recover his money paid on the contract from a vendor who defaults on law day without a showing of tender or even of willingness and ability to perform where the vendor’s title is incurably defective (Greene v. Barrett, Nephews & Co., 238 N. Y. 207), a tender and demand are required to put the vendor in default where his title could be cleared without difficulty in a reasonable time. (Higgins v. Eagleton, 155 N. Y. 466; Wija Bldg. Corp. v. Kay-Wei Bldg. Corp., 223 App. Div. 848, affd. 249 N. Y. 575; Amity Associates v. Amity Farms Shopping Center, 11 A D 2d 811, motion for leave to appeal den. 9 N Y 2d 609; Amity Farms Shopping Center v. Morse, 11 A D 2d 812, affd. 11 N Y 2d 827.) Further, the vendor in such a case is entitled to a reasonable time beyond law day to make his title good (Ballen v. Potter, 251 N. Y. 224). It is, therefore, clear that plaintiff’s advance rejection of title and demand for immediate return of the deposit was unjustified and an anticipatory breach of contract. This position, adhered to throughout, prevented defendants’ title defects from ever amounting to a default. Consequently, plaintiff is barred from recovering the deposit from a vendor whose title defects were curable and whose performance was never demanded on law day. (Higgins v. Eagleton, supra.) Ansorge v. Belfer (248 N. Y. 145, 150) is not to the contrary. It merely holds that a vendee may recover his deposit from a clearly defaulting vendor despite his own unjustified refusal to agree to an adjournment of the law date. It does not deny the doctrine thaf a vendor whose title defects are curable is not automatically in default but, rather, must be put in default by the vendee’s tender of performance and demand for a good title deed. The vendor was there put in default by the vendee’s tender. The vendor simply never retrieved his *247 default by curing the defects and tendering a good title (as he could have —Harris v. Shorall, 230 N. Y. 343). True, defendants here never offered to clear their title and perform; but they were never put in default in the first place by a demand for good title. So Ansorge merely holds with respect to curable title defects what Greene v. Barrett, Nephews & Co. (supra) held with respect to incurable defects — namely, that where the vendor is in default the deposit can be recovered even though the vendee himself is in default or breach, e.g., no showing of performance of conditions precedent or excuse for nonperformance (the Greene case); or an unjustified refusal to adjourn the closing date (the Ansorge case). The difference is that a vendor with incurable[1] title defects is automatically in default, whereas a vendor with curable title defects must be placed in default by a tender and demand, which was not done here.
Defendants obtained an affirmative recovery on their counterclaim for breach of contract based on the loss they sustained when they sold the house to a third person for what the courts below found to be its fair market value. This recovery stands on a different footing from their right to retain .the deposit. As Judge Andkews pointed out, in speaking of a vendee, in Greene v. Barrett, Nephews & Co. (supra), while the vendee’s right to recover the deposit from a defaulting vendor can rest solely upon the latter’s default, an action for damages for breach of contract requires a showing that the plaintiff himself (the vendee in the Greene case) has performed all conditions precedent and concurrent, unless excused. In the case of a purchase of real estate, this would be a showing of tender and demand or, if that be unnecessary, an idle gesture, because of the incurable nature of the title defect, then at least a showing at the trial that the plaintiff vendee was in a position to perform had the vendor been willing and able to perform his part. (Greene v. Barrett, Nephews & Co., supra; Stern v. McKee, 70 App. Div. 142; Norris v. McMechen, 134 Misc. 866 ; Restatement, Contracts, § 306.) Likewise, a vendor such as the defendants here must show a basic ability to perform even if actual tender and demand *248 is unnecessary. However, while it cannot be denied that defendants did not have a title conformable to the contract at law date, an applicable corollary of the above rule excuses even inability to perform conditions precedent or concurrent where such inability is caused by advance notice from the other party that he will not perform his part. (Clarke v. Crandall, 27 Barb. 73; Kotcher v. Edelblute, 250 N. Y. 178; Restatement, Contracts, §§ 270, 284, 306). Not only did plaintiff’s unjustified attempt to cancel the contract and recover her deposit before the adjourned law date render unnecessary and wasteful any attempt by defendants to cure the minor defects before that date, but the failure to specify the objections rendered it impossible. The finding- of the Appellate Division, supported by the weight of the evidence, that the defects were curable, means that defendants were basically able to perform and whatever technical inability existed in this regard on the law date was caused by plaintiff and is excused fully as much as the lack of formal tender.
The judgment should be affirmed, without costs.
Chief Judge Desmond and Judges Dye, Fuld, Van Voobhis, Foster and Scileppi concur.
Judgment affirmed.

. We use “incurable” to mean not within the vendor’s power to remedy within a reasonable time. (See Greene v. Barrett, Nephews & Co., supra, pp. 211-212.)