■ ILEMAR CORP., Respondent, v HENRY KROCHMAL et al., Appellants.— In an action, *inter alia,* to recover the down payment made pursuant to a contract for the sale of real property, defendants appeal from a money judgment of the Supreme Court, Suffolk County, entered October 13, 1976, which is in favor of plaintiff and against defendants, after a nonjury trial. Judgment reversed, on the law and the facts, with costs, and complaint dismissed. The Trial Term granted judgment to plaintiff-respondent on the ground that the defendants sellers had failed to (1) convey the premises free of all encumbrances and (2) provide title insurance from a company willing to insure the property without exception. We disagree with the Trial Term's determination. The original contract for the purchase of the realty herein was signed by the parties on September 10, 1971 and provided that the closing would be held on December 31, 1971 at the offices of the sellers' attorneys. The contract provided, in pertinent part, as follows: "The deed shall be the usual Bargain and Sale, with covenant against Grantor's Act deed in proper statutory short form for record and shall be duly executed, acknowledged, and have revenue stamps in the proper amount affixed thereto by the seller, at the seller's expense, so as to convey to the purchaser the fee simple of the said premises, free of all encumbrances, except as herein stated, and shall also contain the covenant required by subdivision 5 of Section 13 of the Lien Law. * * * The seller shall give and the purchaser shall accept a title such as a member of the New York Board

of Title Underwriters will approve and insure." On April 14, 1972 the closing date was extended to October 14, 1972. Commencing in early October, the sellers' attorney called plaintiff's attorney several times in order to obtain and see the title report secured by the buyer. On October 17, the sellers' attorney finally received an exception sheet from the Title Guaranty Company, which had been engaged by plaintiff's attorney, listing certain objections and exceptions to title. Among the exceptions was a utility easement, listed as exception B. Eventually, defendants sellers gave written notice of a scheduled closing. Neither plaintiff nor its attorney ever appeared. Thereafter plaintiff instituted this action, demanding its down payment back, alleging, *inter alia,* that the utility easement listed in the title report as exception B constituted an encumbrance and rendered title uninsurable, in violation of the terms of the contract. The source of this exception was an instrument executed on April 26, 1920 by and between defendants' predecessor in title and the Marconi Telegraph Cable Company, Inc., which permitted Marconi to erect and maintain its poles on the subject premises. In an affirmative defense, the sellers alleged that they had been ready, willing and able to obtain for the buyer a title insurance policy issued by a member of the New York Board of Underwriters which would approve and insure title without any exception. After initiating this action, plaintiff moved for summary judgment, arguing that it was entitled to judgment regardless of whether the defendants had been able to procure another title company which would insure title free of any exception. In opposition to the motion, defendants argued that they had secured an insurer, i.e., U. S. Life Title Insurance Company, which was willing to insure plaintiff's title free of this objection, and in fact, had insured this title without that objection in the past. Defendants supplied an affidavit from an officer of U. S. Life Title Insurance Company wherein he indicated that the easement exception would not affect title at all. In reversing an order of Special Term and denying plaintiff's motion for summary judgment, this court held, in *Ilemar Corp. v Krochmal* (48 AD2d 693), decided on May 21, 1975: "We are of the view that, under the circumstances, the buyer's motion for summary judgment should have been denied in its entirety. *While it is not clear from the record whether the buyer afforded the sellers an opportunity to obtain for it the requisite title policy, and may even have indicated through counsel that such exception would not be an obstacle to closing, the record is equally unclear as to whether the sellers had, prior to the scheduled closing, been in a position to make a bona fide offer to obtain such a policy. * * * A trial is needed to resolve these conflicting claims."* (Emphasis supplied.) The whole thrust of this court's language in the prior appeal in this action was that the defendants could prevail if they could prove that (1) plaintiff buyer represented through counsel that the easement exception would not be an obstacle to closing and (2) but for plaintiff's representation, defendants sellers would have been in a position prior to the scheduled closing to make a bona fide offer to obtain a title policy without any exceptions. It should be noted that by virtue of our decision in the prior *Ilemar* appeal, the defendants were given an opportunity to prove these facts despite the fact that plaintiff's attorney died early in 1973, over two years before our prior determination. (During the trial the court overruled plaintiff's objections to testimony by defendants' attorney regarding his conversations with plaintiff's then deceased former attorney.) In our view the defendants met their burden of proof by a preponderance of the evidence. The sellers' attorney testified at the trial that, after receiving the title report, he called plaintiff's attorney and indicated to him that in his

view the title report did not create any substantial problems to a successful closing. Plaintiff's attorney agreed and indicated that the exceptions to title, including the utility easement, were "junk objections" with which he was not concerned. In view of this attitude expressed by counsel for the buyer, the sellers' attorney asked his colleague to set a date for the closing. Plaintiff's counsel indicated that he would have to get back to his client and would call back in a day or two. From October 20 to November 5, 1972, the sellers' attorney called plaintiff's attorney three times in order to fix a closing date. Each time the sellers' attorney was put off by the buyer's attorney, who stressed that he would first have to speak to his client. On November 8, 1972 the sellers' attorney again called plaintiff's attorney and insisted on the fixing of a closing date. In response, plaintiff's attorney stated that he was "having a problem with his client as far as setting up a date and he wasn't sure whether the client wanted to proceed with the transaction or wanted to go ahead and close the deal". However, plaintiff's attorney agreed to close on November 15, 1972 at noon. Plaintiff's attorney also suggested that defendants' attorney send him a letter incorporating the time and date of closing which he could show his client and thereby impress upon it the danger of failing to appear and a consequent default. Defendants' attorney sent a letter on that date by certified mail and the letter and return receipt were admitted in evidence. On November 15, 1972 no one appeared on behalf of plaintiff as purchaser and the efforts of the sellers' attorney to reach plaintiff's attorney were unsuccessful. On November 20, 1972 defendants' attorney sent another letter to plaintiff's attorney stating that plaintiff was in default and that defendants would waive the default if plaintiff would close title within the next 10 days. No response to that letter was ever received. While plaintiff's attorney is deceased and could not personally rebut the testimony of the sellers' attorney, the latter's testimony may nevertheless still be accepted and given credence. The fact remains that plaintiff never objected, or even responded, to the written notices of the closing which were sent by the sellers' attorney on November 8 and November 20, 1972. Plaintiff had knowledge of the easement utility exception in mid-October, 1972. Accordingly, under these circumstances, it was incumbent upon it, upon receipt of the written notice of closing from the sellers' attorney, to alert the latter that the easement would have to be removed as an exception. Plaintiff failed to do so, and in fact never raised any objection to the easement until it served the complaint. Under these circumstances, plaintiff's conduct was consistent with and served to corroborate the testimony of the sellers' attorney. The inescapable inference to be drawn from the evidence adduced at trial was that the buyer initially waived any objection to the easement exception and only later decided to renege on the agreement and to use the easement exception as a justification therefor. With regard to defendants' ability to secure a title policy on the property without exceptions before closing, they produced an assistant vice-president and title officer of U. S. Life Title Insurance Company of New York, who testified that his company was willing to insure title without any exception. Finally, plaintiff contends that the utility easement was an encumbrance upon the property which rendered title unmarketable. This argument is not supported by the evidence adduced at the trial. Defendants produced a witness who had been administrative supervisor of RCA Global Communications. He testified that (1) RCA Global was a successor to the Marconi Company; (2) Marconi stopped using its antennae on the site of the easement in the 1930's and (3) Marconi removed all poles and wires in 1950 and effectively abandoned its rights at that time. Under all of these

circumstances, the judgment in favor of plaintiff should be reversed and the complaint dismissed. Hopkins, J. P., Margett and Suozzi, JJ., concur; Shapiro, J., dissents and votes to affirm the judgment, with the following memorandum: With all due respect to my colleagues, it seems to me that in reversing the judgment appealed from and dismissing the complaint they are entirely disregarding the finding of fact, explicit or implicit, made by the trier of the fact and are accepting as gospel truth the testimony of the sellers' attorney that, after receiving a copy of the Title Guaranty Company title report, he spoke to the buyer's attorney (who was deceased at the time of the trial) and that the latter told him that the exceptions to title contained in the report, including the utility easement, were "junk objections" with which he was not concerned. The Justice at Trial Term, sitting as the trier of the fact, expressly found that the "Defendants did not tender a title in compliance with the contract provisions" and "accordingly defendants are in default on the contract." If he had credited the testimony of the sellers' attorney that the buyer's attorney had told him that he was not concerned with the utility easement exception, the sellers' title would have conformed with the agreement made by the parties. The Trial Justice saw and heard the witness whose word is fully credited by this court on a dry record, but he did not, and I see no reason why we should, disturb his findings of fact, particularly in view of the fact that the contract provided that it could not "be changed or terminated orally." We therefore come down to the point where we find the sellers' setting a definite—and according to them—final date for the closing which in effect, by their own choice, made time of the essence. On the day thus fixed by them they were unable to convey a title which the Title Guaranty Company would insure without excepting the utility easement. Under the circumstances, despite the absence of any tender by the purchaser, it is entitled to recover its down payment, for as the court said in *Delegated Props. v Lewis* (36 AD2d 766): "Tenders by buyers are required in order to place sellers in default with respect to curable defects. Tenders are not required, nor is evidence of a willingness and ability to perform necessary, in cases of incurable defects *(Cohen v. Kranz,* 12 N Y 2d 242, 246)." Assuming that the defendants did not make time of the essence, that they could not have eliminated the utility easement defect in their title *within a reasonable time after November 15, 1972* is made conclusively evident by the fact that when they resold the property on October 31, 1973—eleven and a half months later—the utility easement was still on record and was listed as an exception by the title company. Under such circumstances plaintiff's right to recover its down payment is clear (see *Cohen v Kranz,* 12 NY2d 242; *Ruiz v Crespi,* 46 AD2d 44). The attempt to show that the U. S. Life Title Insurance Company would have insured the title without raising the easement objection falls of its own weight when it is realized that the offer to obtain a policy from that company was only made *after the commencement of this action.* Similarly, the effort to use the release of the easement as a defense could not possibly make the defendant's title good as of November 15, 1972, or within a reasonable time thereafter, when it is recalled that such release was only executed on June 7, 1976, some three and a half years after the date set by the defendants for the closing of title with the plaintiff. Hence, I vote to affirm the judgment appealed from.