584 P.2d 86 (1978)
MARCOR HOUSING SYSTEMS, INC., Plaintiff-Appellee,
v.
FIRST AMERICAN TITLE COMPANY of Colorado, Defendant,
The O'Hara Group Denver, Ltd., Defendant-Appellant,
The First National Bank of Englewood, Applicant for Intervention-Appellant.
No. 77-025.
Colorado Court of Appeals, Division II.
May 18, 1978.
Rehearing Denied June 15, 1978.
Certiorari Granted September 5, 1978.
*87 Ireland, Stapleton, Pryor & Holmes, William C. Jensen, James C. Ruh, Denver, for plaintiff-appellee.
No appearance on behalf of Defendant First American Title Company of Colorado.
Banta & Eason, P. C., William K. Malone, Stephen G. Everall, Englewood, for defendant-appellant and applicant for intervention-appellant.
BERMAN, Judge.
Plaintiff, Marcor Housing Systems, Inc. (Marcor), instituted this action against defendant, The O'Hara Denver, Ltd., a Colorado corporation (O'Hara Denver), to recover as liquidated damages for breach of several land sale contracts, $125,000 held in escrow by First American Title Company of Colorado (First American). The trial court determined that Marcor, the vendor, was entitled to the escrow funds because of the *88 purchaser O'Hara Denver's failure to obtain the requisite financing and to attend the scheduled closing for the subject properties. O'Hara Denver appeals, and we affirm.
On April 25, 1974, Marcor entered into separate written contracts with The O'Hara Group, a California corporation (O'Hara California), for the sale of two adjoining tracts of land, the "Greens" and "Commercial" properties. Marcor subsequently granted O'Hara California additional time to obtain financing, the final extension setting a closing date of March 20, 1975. At the time that extension was granted, Marcor also agreed to the substitution of O'Hara Denver for O'Hara California. Apparently in consideration of those accommodations, O'Hara Denver escrowed an additional $25,000.
O'Hara Denver subsequently failed to appear at the closing. Marcor then made its written demand on First American for payment of the escrow funds deposited by O'Hara Denver, and this litigation followed.

I.
O'Hara Denver first challenges the trial court's determination that the Greens and Commercial properties purchase agreements constitute valid and enforceable contracts. Specifically, it asserts (1) there was no meeting of the minds as to the agreements' essential terms, and (2) that the agreements are void for lack of mutuality.
In particular, O'Hara Denver argues that development of the properties as well as their sale was contemplated by the parties, and that, because details of development had not been worked out, the agreements were mere agreements to agree and therefore unenforceable.
The terms of a contract, however, need only be expressed with reasonable definiteness, and "`what is reasonable in any case must depend upon the subject-matter of the agreement, the purpose for which it was entered into, the situation and relations of the parties, and the circumstances under which it was made.'" Ward v. Ward, 94 Colo. 275, 30 P.2d 853 (1934). Here, the trial court found that since the identified "parcels of land were to be transferred for definite consideration payable on a date certain" the agreements were sufficiently definite to be enforced. Implicit in the trial court's conclusion is its determination that future development of the properties was viewed by the parties as clearly collateral to the properties' transfer and sale. In such circumstances, and particularly since this is an action at law for damages in which "`the mere nonperformance by the defendant. . . can often be established without determining all the terms of the agreement with exactness,'" Mestas v. Martini, 113 Colo. 108, 155 P.2d 161 (1944), the trial court's conclusion that there was a meeting of the minds as to the agreements' essential terms was fully justified. See Oles v. Wilson, 57 Colo. 246, 141 P. 489 (1914).
O'Hara Denver also asserts that the agreements are void for lack of mutuality of obligation. This argument focuses on the provisions of paragraph 7 of the Greens agreement and paragraph 9 of the Commercial agreement which state that should Marcor "fail or refuse to perform the obligations required to be performed by it on or prior to the Closing Date," the amounts paid by O'Hara into the escrow fund would be returned to it and "this agreement shall then be null and void and neither party shall have any further obligations hereunder."
As O'Hara Denver concedes, however, if there is any other consideration for a bilateral contract, so that each promise does not depend upon the other for consideration, mutuality of obligation is not essential. See Stanton v. Union Oil Co., 111 Colo. 414, 142 P.2d 285 (1943). And, even if the provisions here rendered Marcor's promises illusory, a proposition which the trial court rejected, any lack of mutuality at the contracts' inception has been cured. For Marcor acted under the contracts by procuring title commitments to the properties and delivering them to O'Hara Denver, by allowing O'Hara Denver to conduct engineering studies on the properties, and by refraining *89 from pursuing sales negotiation with other potential purchasers. All of those actions constituted detriment to Marcor and sufficient consideration to validate the challenged agreements, see Troutman v. Webster, 82 Colo. 93, 257 P. 262 (1927), and, contrary to O'Hara Denver's contention, were bargained for by the parties.

II.
O'Hara Denver also alleges that Marcor itself breached the agreements by failing to procure title to the subject properties as required by the contracts' terms. It points to provisions of both contracts requiring conveyance in fee simple and of merchantable title, subject to certain exceptions including "easements and restrictions of record not materially interfering with" the properties' contemplated use. It argues that since the warranty deeds Marcor prepared for the closing contained an exception of certain mineral interests, its own performance was excused, and the parties must be returned to their status quo ante.
We recognize that ordinarily, a party not himself ready, willing and able to perform his obligations under the contract may not insist on a forfeiture. Linch v. Game & Fish Commission, 124 Colo. 79, 234 P.2d 611 (1951); see Mitchell v. Evans, 150 Colo. 568, 375 P.2d 101 (1962).
O'Hara Denver does not dispute, however, that on the morning prior to the scheduled 5:00 p. m. closing, one of its officers indicated to Marcor's president that the escrow fund belonged to Marcor because of O'Hara Denver's inability to obtain the requisite financing. And, O'Hara Denver does not assert that the alleged title defect in fact prompted O'Hara Denver's failure to close the transaction. Indeed, O'Hara Denver posed no objections to the deed or title commitments procured by Marcor until this litigation was instituted, over six months after the aborted closing. In such circumstances, and particularly since we cannot say that the alleged title defects were such as to be incurable within a reasonable time,[1] had notice of them been given, O'Hara Denver's conduct made it unnecessary for Marcor to clear up the alleged defects in title before claiming the escrow deposit as liquidated damages. See Williams v. Shamrock Oil & Gas Co., 128 Tex. 146, 95 S.W.2d 1292 (1936); Earlin v. Mors, 1 N.J. 336, 63 A.2d 531 (1949); cf. Cohen v. Kranz, 12 N.Y.2d 242, 189 N.E.2d 473, 238 N.Y.S.2d 928 (1963). See also Stelson v. Haigler, 63 Colo. 200, 165 P. 265 (1917).

III.
O'Hara Denver additionally urges that the liquidated damages provision in the agreements is in the nature of a penalty, and is therefore void. This contention also lacks merit.
For a liquidated damages sum to be valid and not amount to an unconscionable forfeiture, the damages to be anticipated must be difficult to ascertain, the parties must intend to liquidate the damages in advance, and the amount stated must be reasonable and not disproportionate to the presumed loss. Perino v. Jarvis, 135 Colo. 393, 312 P.2d 108 (1957); Oldis v. Grosse-Rhode, 35 Colo.App. 46, 528 P.2d 944 (1974).
Here, a commercial investment real estate broker and consultant testified, as plaintiff's expert, that since the properties were taken off the market and the sums were less than 10% of the sale price, the original liquidated damages of $90,000 on the Commercial property and the $10,000 on the Greens property were reasonable, and that the increase of $25,000 of liquidated damages on the Commercial property was reasonable in view of Marcor's extending the date set for closing. The expert further testified that it would have been difficult to ascertain damages in the event of breach.
Such testimony adequately supports the trial court's finding as to two of the three requisites of enforceability detailed previously. *90 And, as to the third, we agree with the trial court that the language of the agreements clearly establishes that the parties intended the sums as liquidating damages in advance. See Oldis v. Grosse-Rhode, supra.

IV.
The First National Bank of Englewood also appeals, contending that the trial court erred in denying its motions to intervene in this action. The bank, however, failed to file a motion for a new trial or to alter or amend that judgment. And since the propriety of its intervention hinged on the nature of O'Hara California's and O'Hara Denver's relationship to each other and the nature and intent of the parties with regard to several assignments to the bank, the hearings on the bank's motions to intervene involved controverted issues of fact within the meaning of C.R.C.P. 59(h). See Rowe v. Watered Down Farms, Colo., 576 P.2d 172 (1978). Accordingly, we lack jurisdiction to consider the matter on review. C.R.C.P. 59(f); In re Marriage of Gardella, Colo., 547 P.2d 928 (1976).

V.
We have reviewed O'Hara Denver's remaining assignments of error with regard to the trial court's exclusion of certain evidence at trial and find them to be without merit.
Judgment affirmed.
SMITH and STERNBERG, JJ., concur.
NOTES
[1] The excepted mineral interests were those conferred by a 1963 deed. Obtaining a release of those interests would therefore appear well within the vendor's power, and we decline to speculate to the contrary.